10086

TATE v. LENHARDT *ET AL.*

· (96 S. E. 720.)

1. APPEAL AND ERROR—CASE ON APPEAL—PURPOSE OF RULES.—Rules of Court as to preparation of the case on appeal should be observed, but were not intended to thwart justice, but to save litigants expense of printing irrelevant matter.

2. APPEAL AND ERROR — CASE ON APPEAL — CORRECTION OF ERRORS. — In view of Supreme Court rule 5 (90 S. E. 7), the case on appeal ought to be accurate and correct in statement, and typographical and other errors ought to be corrected before it is filed in the Supreme Court.

3. USURY—ACTION FOR PENALTY—FINDING—CREDITS.—In action for penalty prescribed by Civ. Code 1912, sec. 2519, for contracting for and receiving usury, based on mortgage notes, evidence *held* not to sustain a finding that plaintiff had paid a certain sum over the credits indorsed on respective notes and mortgages.

4. USURY—BURDEN OF PROOF—PAYMENTS.—The maker of notes ought to know what amounts he has paid, and, in his action to recover the penalty prescribed by Civ. Code 1912, sec. 2519, for contracting for and receiving usury, the burden is on him to prove the payments made.

5. USURY — PAYMENTS — CREDITS — INTENT.—If a payment by maker of notes by accident or inadvertence was not credited in calculating a settlement it would not support a charge of usury though it would if it was left out intentionally by the payee or by agreement of parties as a cloak to usury.

6. APPEAL AND ERROR—DETERMINATION—NEW TRIAL—DISCREPANCIES IN EVIDENCE.—In action for penalty prescribed by Civ. Code 1912, sec. 2519, for usury, where there were discrepancies as to amount of credits to plaintiff on notes, a new trial would be granted to enable him to prove that he was not credited for all payments made.

7. USURY—STATUTE—COMPOUND INTEREST.—Under the usury statute, a lender is entitled to charge and collect compound interest computed annually not exceeding 8 per cent. per annum, the highest rate allowed by the statute, provided he has an express contract in writing therefor.

8. USURY—INTEREST ON INTEREST—STATUTE.—Under the usury statute, the lender may charge and collect compound interest annually at the highest statutory rate, even when the contract provides for the payment of interest on interest in advance.

9. COURTS — DECISION BY DIVIDED COURT — EFFECT. — A decision by an equally divided Court, made when the South Carolina Supreme Court was composed of four members, authoritatively settled the law upon the point decided, not only in that case, but in similar subsequent cases.

10. USURY—RATE OF INTEREST—STATUTE.—Under the usury statute, the payee of a note due one year from date, "with interest from date at 8 per cent. per annum, computed and payable annually," might collect 8 per cent. on principal, any unpaid interest becoming a new principal, on which he might collect interest at 7 per cent. until paid.

Before SPAIN, J., Greenville, Fall term, 1917. Reversed.

Action by Jesse Tate against R. F. Lenhardt and others. Judgment for plaintiffs, and defendants appeal.

*Messrs. Ansel & Harris,* for appellants, submit: *A right of action for usurious penalty does not survive against the estate of the lender:* 58 S. C. 240; 62 S. C. 165; vol. I of the Code, sections 3963, 2520 and 2519. *Collection of excess of interest by mistake or other error, against the intent of the party, will not support a charge of usury:* 68 S. C.

115; 46 S. C. 943; 104 S. C. 368; 3 Parsons on Contracts 128. *It is not usurious to discount the principal at the rate of 8 per cent. if the written contract authorizes it:* 77 S. C. 146. *The receipt of interest in advance of stipulated payment could not be within the statute:* 55 S. C. 132; 32 S. E. 531; 63 S. C. 470; 41 S. E. 550; 89 S. C. 174; 55 S. C. 135. *It is well settled that when interest is to be paid at specific times, interest is allowed on unpaid interest from the respective periods fixed for payment:* 6 Rich. 80; 1 Strob. 115; 2 Hill 408; 2 Nott & M. 38; 10 Am. Dec. 560; 10 Rich. Eq. 582. *But since the South Carolina Statute (18 St. (1882), p. 35, 1) only allows seven per cent. to be taken in the absence of express agreement, it is usurious to take more than that amount:* 30 S. C. 61. *The rule established by the cases cited seems to have been ignored in Plyler v. McGhee:* 76 S. C. 450, 37 S. E. 180, 121 Am. St. Rep. 950, 39 Cyc., p. 962.

*Mr. Adam C. Welborn,* for respondent, submits: *Circuit Courts have no power to grant new trials except in cases tried by jury:* Gen. Stat. 1872, sections 2113 and 2652; Rev. Stats. 1893, sec. 2245; Code of Laws 1902, sec. 2334; Code of Laws 1912, sec. 3831; Crim. Code 1912, sec. 99; 23 S. C., p. 23. *Motion for new trial, if made upon the minutes, can only be heard at the same term at which the trial is had:* Original Code of Proc., sec. 288. *Where an appeal is taken from the decision, a case or exceptions must be settled in the usual form upon which the argument of the appeal must be had:* Sec. 289. *Where only questions of law are in issue, the Judge may direct a verdict:* 14 Stats. 485; Gen. Stat. 1872, p. 636; sec. 288, subd. 4, and sec 289; Code of Procedure 1882, sec. 286, subd. 4, and sec. 287; Code of Procedure 1893, sec. 286, subd. 4, and sec. 287; Code of Procedure 1902, sec. 286, subd. 4, and sec. 287; Code of Procedure 1912, sec. 324, subd. 4, and sec. 325. *A motion for a new trial on the minutes of the Court must be heard, in the first instance, at the same term of trial, and cannot be heard*

*at chambers:* 5 S. C. 348; 10 S. C. 311; 34 S. C. 135; 42
S. C. 132; 47 S. C. 31.   *As to the appellate jurisdiction of
the Supreme Court:* Const., art. V, sec. 4; Code of Proced-
ure, sec. 11.   *The case at bar being a law case, the finding
of the Circuit Court on questions of fact are not reviewable
by this Court:* 3 S. C. 531; 23 S. C. 1; 72 S. C. 270; 45 S. C.
107; 50 S. C. 502; 54 S. C. 560; 58 S. C. 1; 72 S. C. 270;
73 S C. 109; 74 S. C. 189; 77 S. C. 189; 77 S. C. 414; 78
S. C. 487; 82 S. C. 40.   *This Court will not inject a defense
for the defendants that they did not allege and prove:* 108
S. C. 306; 95 S. C. 328; 93 S. C. 167; 57 S. C. 1; 59 S. C.
137; 16 S. C. 579.   *The first four exceptions admitting that
compound interest was calculated, both notes are usurious:*
76 S. C. 450; 72 S. C. 362.   *The defendants cannot be
relieved of the penalty of usury on the ground of a mistake
in computation or other error.   As to mistake of fact:* 68
S. C. 110.   *As to mistake of law:* 57 S. C. 345; 72 S. C.
366; 76 S. C. 451; 104 S. C. 158.   *The statute of limita-
tion could not avail defendants:* 49 S. C. 358-359; 58 S. C.
248; 72 S. C. 365 and 366.   *Defendants in each instance,
received more interest than the law allows:* Vol. I, Code of
Laws 1912, sections 2518, 2519 and 2520.   *The cause of
action for usury survives:* 24 Stat. 945; vol. I, Code of
Laws of 1912, sec. 3963; 103 S. C. 517; 105 S. C. 339; 97
S. C. 29; 101 S. C. 403; 76 S. C. 501.   *An executor de son
tort has all the liabilities though none of the privileges that
belong to character of an executor:* 30 S. C. 273 and 274.

September 4, 1818.

The opinion of the Court was delivered by MR. JUSTICE
HYDRICK.

This is an action to recover the penalty prescribed by sec-
tion 2519, vol. I, Civil Code 1912, for contracting for and
receiving usury.   The attorneys for both sides agreed that
there was no dispute in the evidence, and that only issues
of law were involved.   The case was, therefore, heard by

the Court, which gave judgment for plaintiff for $1,666.40, which is double the total sum found to have been received as interest on two notes given by plaintiff to Richard Lenhardt, who died intestate January 30, 1912. The defendants, who are his heirs, settled his estate without administration, and plaintiff paid to them the balance due on the notes, and then brought this action.

Respondent moved to dismiss this appeal, because the "case" was not prepared in conformity with the rules of this Court. We reserved decision of the motion, and heard argument on the merits. While we might dismiss the appeal under the rules, we think that would be too severe a penalty to impose upon the appellants for the dereliction of their attorneys. We shall, however, impose a lesser penalty, but one which we think is sufficient, under the circumstances.

It is true, as contended by respondent's attorney, that the rules ought to be observed and enforced. But they were not intended to be the means of thwarting justice, or of working injustice, but they were adopted as aids to counsel and the Court in the administration of justice, and to save litigants the great and unnecessary expense, too often incurred, in the printing of irrelevant matter in the "case." While appellants' attorneys are primarily at fault, respondent's attorney is not wholly without fault, for the duty rests upon the attorneys for respondent as well as those for appellants to see that the "case" is prepared according to the rules; and when a "case" is proposed which is not so prepared, the attorneys for respondents should call attention to it, and propose such amendments as will make it conform to the rules; and, if the Circuit Court should refuse to allow such amendments, they should except to the order settling the "case." Rule 5, sec. 8 (90 S. E. 7).

On February 3, 1907, plaintiff gave Richard Lenhardt a note for $516.30, due one year from date, "with interest

574 .    Tate *v.* Lenhardt.

Opinion of the Court.     [110 S. C.

from date at 8 per cent. per annum, to be computed and payable annually unail paid in full;" and on September 2, 1909, he gave him a second note for $400, due 12 months after date, "with 8 per cent. interest per annum to be paid annually, if not so paid to be computed and added to the principal, and bear interest at the same rate, until the whole amount is paid in full." On the first note the following credits were indorsed · February 9, 1907. $50; March 10, 1908, $140; March 23, 1909, $120; January 31, 1912, $5; March 29, 1913, $50; December 5, 1913, $10 ; June 25, 1915, $75; and on April 3, 1916, $207.53 was paid as the balance due. On the second the following credits were indorsed: November 15, 1910, $125; January 26, 1912, $56; March 29, 1913, $50; December 5, 1913, $50; and on February 9, 1916, $270.97 was paid as the balance then due.

There are some apparent discrepancies in the evidence as to some of the credits to which we wish to call attention. In fact, there appears in the record quite a number of discrepancies as to figures and dates, some of which are apparently typographical errors. All of them may be, but as to one or two of them there is some doubt. The "case" ought to be accurate and correct in statement, and typographical and other errors ought to be corrected, before it is filed in this Court. If that had been done, no doubt the Court would have been saved a good deal of time and labor unnecessarily spent in trying to reconcile these apparent discrepancies.

Plaintiff testified that when he went to make the settlement with defendants there was apparently a discrepancy in the date of one of his receipts and the credit on the note and the defendants told him to get all his receipts; and after the settlement was made they told him, if there was any error found in it, they would gladly make the proper correction. He testified also that the credits indorsed on the respective notes and mortgages represented all the payments made. Nevertheless the Court found that he had paid $450 more than the sum of those credits. This finding is without

evidence to support it. If the checks and receipts in evidence are compared with each other and with the credits on the notes, it will be found that they correspond so nearly in amount and date that, as the record now stands, the evidence is susceptible of no other conclusion than that the Court gave plaintiff credit twice for the same amounts—at least in one or two instances, and possibly in each instance where a credit not indorsed on the notes or mortgages was allowed.

To illustrate: There was a check dated March 28, 1913, for $100. While there was no credit on either note of that date for that amount, there is a credit of $50 on each note, dated March 29, 1913, one day after the date of the check, and there was no check or receipt for any payment of $50 at or about that date. Most probably the payment of $100 was divided and half credited on each note.

There was a check for $150, dated December 4, 1913, and no credit of that amount on that date is found on either note; but there is on one of them a credit of $50, dated December 5, 1913, and on the other a credit of $100, dated December 5, 1913. As there was no check or receipt showing any other payment on or about that date, it is most probable that the $150 payment was divided, and $50 credited on one note, and $100 credited on the other, as of the date of receipt of the check. But the Court gave plaintiff credit for the $150, besides the credits on the notes.

There was a check for $125, dated November 14, 1910, and a credit of that amount on one of the mortgages, dated November 15, 1910, and a receipt of that date for the same amount. But, in addition to this, the Court gave credit for a payment of $125 as of November 9, 1910, although there is no check or receipt for that amount on that date, or near that date, except that of November 15, 1910.

There were two statements of credits introduced by plaintiff. One of them, called a "memorandum," appears to have been given him by the cashier of the bank at which he obtained the checks. On that memorandum, as compared

with the cashier's checks in evidence, there are two discrepancies. The memorandum shows a check dated November 9, 1910, but the only check in evidence was one dated November 14, 1910. On the other statement, which plaintiff says defendants used in making their calculation, there appears a credit of $125 on November 10, 1910, but there is no check or receipt of that date in evidence. Was there more than one payment of $125 in November, 1910? Or was there only one payment of that amount, and are the discrepancies in the dates mere errors?

Again, in the cashier's memorandum, there is an amount of $75 on June 24, 1914. But there is no check or receipt in evidence to prove any payment of that date. But there was a check for that amount on June 24, 1915, and a credit for that amount on one of the notes on June 25, 1915. Nevertheless, the Court gave credit for that amount on June 25, 1913. Whether that is a mere typographical error we are unable to say, but there was no evidence of any payment of that date.

As will be seen, the aggregate of the four items discussed is $450, the amount which the Court found to have been paid in excess of the credits on the notes and mortgages. No doubt the finding that such a large amount had been paid in excess of the amounts actually due on the notes induced the conclusion that defendants had collected usurious interest. But there was not a particle of evidence that any of the payments was paid as interest. So far as it appears, not one of them was paid as interest, but each was made simply as a payment on the notes.

Plaintiff knew or ought to have known what amounts he had paid. The burden was upon him to prove the payments made, and in view of his testimony that all payments made had been credited on the notes, and of the fact that all the checks and receipts in evidence appear to have been credited on the notes, there was no competent evidence to support the finding of any other payments.

Plaintiff is entitled to credit for every payment made, but he is not entitled to credit for the same payment but once. We must not be understood as finding conclusively that all payments made have, in fact, been credited. But we hold only that, in the present state of the record, the evidence is not sufficient to sustain a finding that any payments were made for which credit was not given and indorsed on the notes and mortgages.

As the parties agreed to settle, and did settle, making their calculations based upon those credits only, the plaintiff's case, so far as the charge of usury is concerned, must stand or fall by them, unless he can show that others were left out *to evade the usury law;* for, if a payment was made to Richard Lenhardt, or even to these defendants, which was accidentally or inadvertently not credited or left out in-making the calculation, that would not support a charge of usury. But it would, if it were left out intentionally by defendants, or by agreement of the parties, *as a cloak to usury.* But where the parties in good faith agreed upon the credits indorsed on the notes and mortgages, as a basis of settlement, and made their calculations accordingly, it would be manifestly unjust to allow the plaintiff to bring forward a credit or receipt subsequently discovered, and make it the basis of a charge of usury. In fact, plaintiff did not claim in his testimony that he had, since the settlement, discovered any payment not credited by defendants.

We consider the case, therefore, upon the assumption that plaintiff is entitled to no other credits than those indorsed on the notes and mortgages. If the fact be that he is entitled to other credits, that can be determined upon the new trial, which we think should be had, in view of the discrepancies in the evidence which we have pointed out, and because we do not want to foreclose plaintiff's right to prove, if he can, that he did not get credit for all payments made.

37—110.

The Circuit Court held that defendants were guilty of usury and liable for the penalty therefor because they collected compound interest on both notes. According to the decisions of this Court construing the statute the 7-9 lender is entitled to charge and collect compound interest, computed annually, not exceeding the rate of 8 per cent. per annum, which is the highest rate now allowed by the statute, provided he has an express contract in writing therefor. It was so held, at least by implication, in *Bank v. Parrott,* 30 S. C. 61, 8 S. E. 199.

After that decision it became the common practice for banks and money lenders to insert in obligations taken by them an express agreement for the payment of interest on interest annually at the same rate as that agreed to be paid on the principal—usually the highest rate allowed—in case the interest should not be paid when due. In the subsequent case of *Newton v. Woodley,* 55 S. C. 132, 32 S. E. 531, 33 S. E. 1, it was expressly decided that the lender had the right to charge and collect compound interest annually at the highest rate allowed by the statute, and that, too, when the contract provided for the payment of interest on interest in advance. It was there held, also, that the principle had been practically decided in *Bank v. Parrott, supra.* True, the decision was by an equally divided Court; but it has been settled that such decisions, when this Court was composed of four members, authoritatively settled the law upon the point decided, not only in that case, but in similar subsequent cases. *Florence v. Berry,* 62 S. C. 469, 40 S. E. 871; *Sellers v. Chemical Works,* 76 S. C. 345, 56 S. E. 978. Therefore the principle decided in *Newton v. Woodley* was reaffirmed in *Heyward v. Williams,* 63 S. C. 470, 41 S. E. 550, by unanimous decision of the Court, and has ever since been the settled law of the State.

The Court below rested its decision in this case on *Plyler v. McGee,* 76 S. C. 450, 57 S. E. 180, 121 Am. St. Rep. 950. But the Court evidently misconstrued that decision. In

that case the note stipulated for "interest after maturity at the rate of eight per cent. per annum until paid. * * * Interest to be paid or *computed annually* at the same rate until paid in full" (italics added). The interest was not computed annually at 8 per cent., but was *compounded* annually at that rate. There is a difference between a contract to compute interest annually and one to compound it annually, where the principal bears a higher rate than that allowed by law or the terms of the contract on the interest after it becomes due. And by reference to the terms of the contract in *Plyler v. McGee,* it will be seen that it does not expressly provide for the payment of interest on interest at 8 per cent. But, as it was so calculated and collected, the lender was held to be guilty of collecting usury and liable for the penalty, notwithstanding he honestly believed that he had the right to do so by the terms of the contract. Under the statutes and our decisions, he was entitled to collect 8 per cent. on the principal, to be computed annually, and only 7 per cent. on any interest due and unpaid, because there was no express agreement in writing to pay a higher rate on interest due and unpaid.

It follows that the Court erred in holding the $400 note usurious on its face, or that the interest collected was in excess of that expressly provided for by the terms of the contract. If the calculation be made according to the established rules, it will be found that the amount collected was in fact a few dollars less than the sum due.

As to the $516.30 note: There is no contention, and can be none, that that note is usurious on its face. But it was alleged, and the Court found, that the interest was compounded, and, therefore, unlawful interest was collected. The Court seemed to be of opinion that any compounding of interest was unlawful, but we have seen that this was error. If the interest on this note had been compounded at the rate of 8 per cent., that would have been unlawful; for, by the terms of the note, there was no

express agreement in writing to pay interest on interest at that rate. Therefore, under the statutes and our decisions, the defendants were entitled to collect 8 per cent. on the principal, which was to be *computed and paid annually,* and therefore, any sum of interest due and unpaid became a new principal or debt on which they were entitled to collect interest, but only at the rate of 7 per cent. per annum from the time it became due until it was paid. The defendants testified that they calculated the interest on the principal at 8 per cent. per annum, and calculated interest on interest due and unpaid at the rate of 7 per cent. per annum. If so, the calculation was made according to the terms of the contract, and was not unlawful; and a calculation so made will show that, in fact, less than the amount lawfully due was collected.

In the view which we have taken of the case, the other questions made by the exceptions need not be considered.

The judgment of the Circuit Court is reversed, and the case is remanded for a new trial, if plaintiff be advised that he can prove payments for which credit was not given. But notwithstanding the reversal of the judgment, because of their failure to comply with the rules of this Court in the preparation of the "case," the appellants shall not be allowed to tax any costs or disbursements of the appeal against respondent, but must pay respondent's disbursements on appeal.

Judgment reversed.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS and FRASER concur.

MR. JUSTICE GAGE did not sit in this case.