## BUTLER v. BUTLER.

1. USURY—DEBTOR AND CREDITOR.—Receipt of usurious interest on a contract lawful on its face prevents the creditor, under Rev. Stat., 1390, from collecting on original debt more than the principal sum lent, without interest and costs, but does not give debtor the right to have all payments of interest credited on principal sum.

2. IBID.—PENAL STATUTES—SURVIVAL OF ACTIONS—COUNTER-CLAIM.—Rev. Stat., 1391, providing forfeiture for collecting usurious interest,

is a penal statute, and action thereunder cannot be maintained by debtor against the personal representative of the creditor for double the amount of usurious interest paid, either by direct action or counter-claim.

*Allen* v. *Petty*, 58 S. C., 240, affirmed.

Before GAGE, J., Aiken, June, 1900.　Affirmed.

Action by Fannie Butler, admx. of John Thomas Butler, against W. H. H. Butler *et al.,* to marshal the assets, &c., of intestate's estate.　Eva Harker Horner, a creditor of said intestate, proved a note and mortgage against intestate under the general order in this proceeding.　The Circuit decree is as follows:

"The exceptions of the plaintiff and of the defendant, Horner, make in different forms, the question of unlawful interest charged and received by Mrs. Horner and promised and paid by John Thomas Butler.　The promise to pay is evidenced by the note of J. T. Butler for $1,500, dated on 25 March, 1891, due 25 March, 1892.　'Interest from maturity at the rate of eight per cent. per annum,' secured by mortgage.

"There is testimony as to seven payments, to wit: 1st. 12th September, 1892, received $75 interest from March 25th to September 25th, 1892.　2d. 23d March, 1893, received $75, interest on note of $1,500 from September 25th, 1892, to March 25th, 1893.　3d. 4 May, 1894, received $100, balance interest on $1,500, this payment is also endorsed on the note.　4th. 3 September, 1894.　Note for sixty days for $75, made by Butler to Horner and discounted by Goodrich, cashier.　5th. 21 April, 1896, received $150, on interest on borrowed money......and, 'agree that when balance of interest is paid the loan shall be extended until March 4th, 1897.'　6th. 23 March, 1897.　'Balance of interest on the within note paid up to date.'　There is also an endorsement of this same payment on the mortgage.　7th. 28 March, 1898.　'Interest paid, $120.'

"Those payments numbered 1, 2, 3, and 5 are evidenced

by Horner's receipts, and 3 is also endorsed on the note. That payment numbered 4, if proved to be a payment, is evidenced by the testimony of Goodrich, cashier. Those payments numbered 6 and 7 are evidenced by endorsement on the note; and number 6 is also endorsed on the mortgage. The note is not on its face an agreement to pay an unlawful rate of interest. The agreement is to pay eight per cent. after maturity, and that is lawful. There is no testimony tending to prove that any interest was paid or reserved for the year beginning 25 March, 1891, and ending 25 March, 1892; much less is there any testimony tending to prove, if paid, it was unlawful. But if the creditor nevertheless accepted interest in excess of that allowed by the law and the contract, that act was usury. Whether the creditor did so accept unlawful interest, is a question of fact, and the only testimony touching the issue is the receipt and endorsements above referred to, and the testimony of Mrs. Horner and Goodrich. Two of the receipts given to Butler by Mrs. Horner, numbered 1 and 2, specify the receipt of $75 as interest on the loan for six months. That was at the rate of ten per cent. per annum, and was unlawful. It is clear, therefore, that on 12 September, 1892, the creditor accepted an excess of $15, and on March, 1893, she accepted an excess of $15 over the contract and lawful rate. It is true, the creditor undertook to prove that in each case the $15 was paid, not as interest on the loan, but for other purposes. I think the testimony of Mrs. Horner to that effect is incompetent under section 400 of the Code. The evidence of the other five payments do not indicate that unlawful interest was received, nor is that fact manifest from the testimony of the witnesses. The testimony of Goodrich does not establish the fact that the note of Butler to Horner which he discounted was a payment of interest, much less does it prove that it was all for interest, and unlawful. The payment numbered 3 is expressed to be for a balance, and at that date there was more than that amount of lawful interest due. The payment numbered 5 was clearly lawful, in the

light of the testimony of Chambers. The payment numbered 6 declares no specific sum paid. The seventh and last payment was on its face at the rate of eight per cent. The receipt of an unlawful rate of interest is in the nature of a penal act, and must be proved by him who alleges it. It is not safe to settle rights upon conjecture. It was contended that the neglect of the creditor to endorse payments on the note was an act of concealment. That is not a legitimate conclusion. It would be unwarrantable to infer a wrongful purpose from a common act of negligence, if, indeed, it be negligence not to endorse payments on a note. There were, then, two unlawul receipts of interest, and though there is no formal plea of usury, and demand for judgment by counter-claim, yet in an act of this character the debtor may make the defense and claim the penalty prescribed by statute. But the debtor has only six years after the payments in which to demand the penalty. The statute of limitations to plaintiff's action for the penalty became a complete bar in September, 1898, and March, 1899, respectively.

"It was contended in argument by plaintiff, that the unlawful receipt of interest—that is, the interest received in excess of eight per cent.—was plead and should be sustained as payments on the principal debt, and as against payment the statute does not run. Usury and the remedy therefor are creatures of the statute; the statute is penal and must be strictly construed. The statute prescribes two penalties, to wit: if the creditor comes into Court to collect unlawful interest, say ten per cent., he cannot have the eight per cent., much less the excess of two per cent.; and second, if the debtor shall have paid unlawful interest, *i. e.,* the excess over the lawful, he may have that excess back, by action or by counter-claim, and as much again, but he cannot have back that which was lawful, the eight per cent. In this case, if the debtor pursues the second remedy, he is met by the act of limitations; if he pursues the first remedy, the answer is, the creditor is not asking to recover interest accrued before 25 March, 1898; that has been paid and accepted as interest

and is a completed transaction, the opening of which the statute does not expressly or by implication warrant. The case of *Hunter* v. *Clark,* 2 Speer, 83, was cited by plaintiff's counsel to sustain his contention. The question was not made there. I think the case at bar is governed by the principles stated by Chief Justice McIver in *Hardin* v. *Trimmier,* 30 S. C., 391. But did the receipt of the unlawful interest at the times hereinbefore stated, to wit: on 12 September, 1892, and March, 1893, defeat the right of the creditor to recover any interest accruing since 25 March, 1898—that was the day up to which the debtor paid and the creditor received all interest then due. Section one of the act of 1877 declares that no interest above the lawful rate shall be taken. Section two declares that the lending of money, therefore, the taking of interest, at an unlawful rate, shall limit the creditor's recovery to the principal sum, without interest and without costs. 16 Stats., 325.

I am, therefore, of the opinion, the defendant, Mrs. Eva Harker Horner, is entitled to the process of this Court to recover only the principal sum of $1,500, and no more."

From this decree the plaintiff appeals.

*Mr. W. T. Gary,* for appellant, cites : *What is usury?* Rev. Stat., 1390, 1391 ; 30 S. C., 69, 396; 51 S. C., 550; 3 Par. on Con., 123 ; 2 Spear, 85; 1 Rich. Eq., 417. *Claim for usurious interest is not barred in three years:* Rev. Stat., 1391 ; 49 S. C., 345. *Who can plead usury:* 29 S. C., 508; Ency. Usury, p. 950.

*Mr. G. W. Croft,* contra, cites : *Right to claim penalty for receiving usurious interest dies with debtor:* 58 S. C., 240.

December 3, 1901. The opinion of the Court was delivered by

MR. CHIEF JUSTICE MCIVER. Some time in September, 1899, the plaintiff brought this action against the heirs and creditors of her intestate, John Thomas Butler, to marshal

the assets of his estate, to sell real estate in aid of the personalty for the payment of his debts, to injoin his creditors from suing at law, and requiring them to prove their demands under the proceedings in this case. Accordingly an order was granted requiring the creditors to prove their demands before the master, and in pursuance of this order the defendant, Eva Harker Horner, presented her demand; and the only question presented by this appeal is as to the amount of the demand which she is entitled to have established as a debt due by the intestate. This demand is evidenced by a note bearing date the 25th of March, 1891, for $1,500, payable on the 25th of March, 1892, "with interest after maturity at the rate of eight per cent. per annum," which note was secured by a mortgage of realty executed by the intestate, John Thomas Butler.

It appears from the testimony, and the fact is so found by the Circuit Judge (to which finding there is no exception), that seven payments on account of interest were made by the intestate in his lifetime, the amounts and dates of which are set out in the Circuit decree—a copy of which should be incorporated by the Reporter in his report of the case. Two of these payments show on their face that they were in excess of the lawful interest stipulated for in the contract, to wit: the payment made on the 12th September, 1892, and the payment made on the 23d of March, 1893, because it is expressly stated in the receipts given therefor that they were each made for six months interest on the note, and the amount received—$75 in each instance—clearly shows that the interest was computed at the rate of ten per cent. instead of eight per cent. as stipulated for in the note, that is to say, two per cent. in excess of the lawful rate. Upon this state of facts the general question presented by this appeal is as to the effect of these two payments of usurious interest—the appellant contending, as we understand it: 1st. That even assuming that the original contract was not tainted with usury, yet by reason of these two payments of usurious interest, the contract became infected with usury at

the time of such payments, and, therefore, the appellant was entitled to a credit on the principal sum due, of the amount of those two payments as well as the amount of all subsequent payments. 2d. That in addition to such credits the appellant is also entitled to a credit for the amount of double the sum of the excess of interest over the lawful rate included in those two payments. These two questions depend entirely upon the construction of the statute in regard to usury. As is said in 2 Pom. Eq. Jur., sec. 937: "Since the illegality of usury is wholly the creature of legislation, the provisions of the statute must furnish the rule determining the extent, limits and occasion of relief." The provisions of our legislation upon the subject of usury are to be found in sections 1390 and 1391 of the Rev. Stat. of 1893, and the questions which we are called upon to decide in this case must be determined by a proper construction of the language used in those two sections, without regard to the amendments made by the act of 1898, 22 Stat., 749, for it is expressly declared in that act, "that this act shall not apply to contracts made before it goes into effect;" and as that act was approved on the 10th day of February, 1898, and did not go into effect for twenty days thereafter, and as the contract here in question was made before the act of 1898 went into effect, it is quite certain that the provisions of the act of 1898 cannot be applied to this case. The provisions of the sections 1390 and 1391 are as follows: "Sec. 1390. No greater rate of interest than seven per centum per annum shall be charged, taken, agreed upon or allowed upon any contract arising in this State for the hiring, lending or use of money or other commodity, except upon written contracts, wherein by express agreement a rate of interest not exceeding (8) eight per cent. may be charged. No person or corporation lending or advancing money or other commodity upon a greater rate of interest shall be allowed to recover in any Court of this State any portion of the interest so unlawfully charged; and the principal sum, amount or value so lent or advanced, without any interest, shall be deemed and

taken by the Courts of this State to be the true legal debt or measure of damages, to all intents and purposes whatsoever, to be recovered without costs : *Provided,* That the provisions of this section shall not apply to contracts or agreements entered into, or discounts or arrangements made prior to the first of March, 1890. Sec. 1391. Any person or corporation who shall receive as interest any greater amount than is provided for in the preceding section shall, in addition to the forfeiture therein provided for, forfeit also double the sum so received, to be collected by a separate action or allowed as a counter-claim to any action brought to recover the principal sum."

Our first inquiry is as to the proper construction of the language of these statutory provisions which constitute the law applicable to this case. In pursuing this inquiry we do not think that much, if any, light can be thrown upon the subject by decisions elsewhere, or even decisions in this State made before the law-making power had declared in the language employed in these sections what the law was upon the subject of usury at the time the contract here in question was entered into. Of course, any decisions made by this Court since that time must be considered as binding upon us, unless the Court shall see fit to reverse or modify the same or any one of them. An analysis of the language used in sec. 1390 shows clearly that the first object was to declare what should be the lawful rate of interest in this State, and the second object was to declare what should be the effect of charging, taking, agreeing upon or allowing a rate of interest in excess of that prescribed in the section. It is equally clear that the rate of interest fixed by this statute is seven per cent., but by express agreement in writing, a rate not exceeding eight per cent. may be charged; and as the contract here in question does contain such an express agreement, it may be said that the lawful rate of interest on said contract is eight per cent. It is equally plain, that if more than that rate of interest has been charged, taken or allowed, then the effect is to forbid the

recovery in any Court in this State of anything more than the principal sum lent, without interest or costs. For it will be observed that under the express terms of the statute, the prohibition is not only against *charging* but also against *taking* or *allowing* interest in excess of the lawful rate; and if such excess is either charged or taken or allowed, then the effect is to prevent a recovery in any Court of this State of anything more than the principal sum lent, without interest or costs. Proceeding, then, to the next section (1391), the language used clearly shows that its sole object was to provide that any person who should receive interest in excess of the lawful rate, should, in addition to the forfeiture provided for in the preceding section, forfeit also double the amount of such excess, as held in *Hardin* v. *Trimmier*, 30 S. C., 391, to be collected by a separate action or allowed as a counterclaim to any action brought to recover the principal sum. Having thus stated what we regard as the true meaning of the statutory provisions upon the subject of usury which are applicable to this case, we proceed to inquire whether the two propositions above stated, as contended for by appellant, can be sustained. In the first place, we would remark that we do not see how it can be doubted that the contract here in question is, upon its face, free from the taint of usury; for it is nothing more than a contract in writing by which the intestate promised to pay the defendant, Horner, the sum of $1,500 at a specified time, with interest after maturity at the rate of eight per cent. per annum—and this, as we have seen, is expressly permitted by the statute. But it appears from the findings of fact by the Circuit Judge, to which no exception has been taken, that two of the payments of interest made by the intestate to the defendant, Horner, under the contract, were infected with usury, as the interest paid was at the rate of ten per cent.—two per cent. in excess of the lawful rate; and upon well settled principles, this tainted the whole transaction with usury. Hence, if the defendant, Horner, was seeking to recover from the plaintiff as administratrix of the deceased debtor or, what is practically the

same thing, seeking to establish her claim against his estate under the proceedings in this case not only for the principal of the sum loaned, $1,500, with interest thereon at the stipulated rate since the last payment of interest, she would not be allowed to do so; and this was precisely what the Circuit Judge held. But the appellant contends that as the two payments above referred to infected the whole transaction with the taint of usury, those two payments, as well as all subsequent payments, should be treated as payments on the principal sum loaned, and the amount of the claim which the defendant, Horner, should be allowed to prove against the intestate would be only the balance of the principal sum, $1,500, after deducting the whole amount of the said payment, together with another deduction, which will be considered when we take up the second proposition contended for by appellant. We do not think that the first proposition contended for by appellant can be sustained. Sec. 1390 only prohibts the *recovery* of any interest upon a contract tainted with usury, and there is nothing in the statute which either expressly or by necessary implication provides that interest paid for or to the commencement of an action upon a contract infected with usury, and credited as such, shall be regarded as a payment upon the principal sum loaned and so credited. In other words, section 1390 does not purport to disturb an executed transaction, but simply provides that where the power of the Court is invoked for the enforcement of a contract which was either usurious in its inception or has since become so, by the subsequent payment of usurious interest or by any other means, that the creditor shall not be allowed to recover anything more than the principal sum loaned, without interest or costs. For example: if A. executes his note whereby he promises to pay to B. a specified sum of money at a designated time, with interest from the date of the note at the lawful rate, and the contract subsequently becomes tainted with usury by the payment of interest at a rate in excess of the lawful rate, sec. 1390 does not purport to disturb such payment by declaring that it shall operate as

a credit on the principal of the note, but simply declares that if the payee undertakes to enforce the performance of such contract by any proceeding at law, he will not be allowed to recover anything more than the principal sum loaned,without any interest or costs; but this cannot affect interest already paid and credited as such. In other words, the only forfeiture declared by sec. 1390 is the forfeiture of the right to recover any interest or costs in any proceeding in any Court of this State to enforce the performance of a contract which is either usurous in its inception or has subsequently become so.

The next inquiry is whether the second proposition contended for by the appellant can be sustained. This question, as well as the first, has already been decided adversely to the contention of the appellant, in the case of *Allen* v. *Petty,* 58 S. C., 240, and this would, ordinarily, be sufficient to dispose of this case. But as counsel for appellant has asked and obtained leave to review that case, we have again carefully reconsidered the whole matter, and while we might content ourselves with simply saying that we are quite satisfied with the conclusions as well as the reasons therefor, as set forth by Mr. Justice Gary in his opinion in that case, we will, in deference to the zeal and ability with which the counsel for appellant has pressed his views in this case, proceed to present some additonal views in support of the conclusions reached in the case of Allen *v.* Petty on this second question, as we have already done in reference to the first question. The second question depends largely if not entirely upon the proper construction and effect of sec. 1391. These two sections, 1390 and 1391, while relating to the same subject—usury—manifestly provide two different and distinct remedies for the debtor who has either been charged with usurious interest or from whom usurious interest has been received by the creditor. By the former (1390), the only remedy provided for a debtor who has been *charged* with usurious interest or from whom usurious interest has been taken, is the forfeiture by his creditor of the right "to

recover in any Court in this State" anything more than the principal sum loaned, without interest or costs. By the latter (1391), the only remedy provided for the debtor is the right to recover double the sum in excess of the lawful rate of interest which has been received by his creditor, either by a separate action or by way of counter-claim to any action brought by the creditor to recover the principal sum loaned. That these two remedies are expressly recognized to be distinct and different is shown by the language used in sec. 1391, where it is in terms declared that the penalty imposed by that section is *"in addition"* to the forfeiture provided for in the preceding section. So that it is perfectly clear that if the debtor, J. T. Butler, were still living, and the creditor, Horner, were to bring an action to recover the amount mentioned in the contract, the debtor, Butler, would have a right to invoke the benefit of both of these remedies. But the precise question here presented is whether the plaintiff, as administratrix of the deceased debtor, Butler, can invoke the remedy provided by section 1391, by bringing a separate action for the recovery of the pecuniary penalty imposed by that section or, what is practically the same thing, set up as a counter-claim such pecuniary penalty (for a counter-claim is nothing but a cross-action) to a claim which the creditor is seeking to enforce by this proceeding. This involves the question whether the right of action to recover a penalty survives. That question is conclusively determined by the authorities cited in the case of Allen *v.* Petty, at page 245. While it is quite true that the personal representative of the debtor may avail himself of the defense of usury—27 Am. & Eng. Ency. of Law, 950—a doctrine which is recognized by our own case of *Jefferies* v. *Allen,* 29 S. C., at page 508, it is a very different question—whether such personal representative can maintain an action to recover a penalty imposed for receiving usurious interest. Such an action is a penal action, and the well settled rule of the common law that such right of action does not survive, unless there is a statute giving such right, must be applied—5 Ency. Pl. and Prac., at

pages 811 and 812. Now, in this State we never had any such statute until the passage of the act of 1898 above referred to, which, as we have seen, cannot be applied to this case. This is a legislative recognition of the common law rule. See, also, 21 Ency. of Pl. and Prac., p. 356, where the rule is again stated in this language: "As a general rule, and in the absence of statutory provisions to the contrary, a right to sue for the recovery of a statutory penalty does not survive the death of either party." And amongst cases cited from twelve States as well as from the Supreme Court of the United States, is our own case of *Allen* v. *Petty, supra.* If it should be said that sec. 1391 imposes no *penalty* for the receipt of usurious interest and, therefore, this proceeding cannot be regarded as a penal action or in the nature of such action, the answer is obvious—for while it is true that the word "penalty" is not used in that section, yet the word "forfeiture" is used; and the authorities show that those two words are generally used synonymously. See title, "Forfeit" and "Forfeiture," 13 Ency. of Law, at pages 1073-1080 of the second edition. See, also, 16 Ency. of Pl. and Prac., 231-2, where it is said: "A statute properly designated as penal is one which inflicts a *forfeiture* of money or goods by way of penalty for breach of its provisions, and not by way of fine for a statutory crime or misdemeanor" (italics ours). And at page 234 of the same valuable work it is said: "With reference to penal actions, the word 'penalty' means the forfeiture inflicted by a penal statute." It is clear, therefore, that sec. 1391 is a penal statute, and the action to inforce its provisions must be regarded as a penal action. We think, therefore, that the decision in the case of Allen *v.* Petty is fully sustained by both reason and authority, and must be adhered to. Under this view, the additional ground upon which the respondent asks that the judgment below should be supported, to wit: that the claim to recover the penalty imposed by sec. 1391 is barred by the statute of limitations, cannot arise and need not, therefore, be considered.

12—62

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.