14721

JONES v. GODWIN *ET AL.*

(198 S. E., 36)

512

*Messrs. Grimsley & Nesmith* and *Royall & Wright,* for appellants,

*Messrs. W. Marshall Bridges* and *Henry E. Davis,* for respondent,

July 13, 1938.

The opinion of the Court was delivered by Mr. L. D. Lide, Acting Associate Justice.

The defendants appeal from a decree of Hon. E. C. Dennis, Circuit Judge, dated June 23, 1937, for the foreclosure of three mortgages on lands of the estate of John E. Godwin, deceased, situate in Florence County. John E. Godwin died intestate in the year 1912, leaving as his only heirs-at-law his widow, Lillie C. Godwin, and his eight children, to wit, Fred B. Godwin, John C. Godwin, Annie L. Godwin, Pearl Godwin, Elma Mae Godwin Moore, Lizzie Godwin (since deceased), Willie Godwin and Albert Godwin. Mrs. Elma Mae Godwin Moore conveyed her interest in the lands in question to her mother, Lillie C. Godwin, on November 2, 1918, prior to the execution of any of the mortgages involved herein.

The plaintiff, Dallas L. Jones, was engaged in business as a commercial factor, and as such had many transactions with John E. Godwin, advancing him money and supplies from time to time; and after the death of Mr. Godwin he continued to do a like business with his widow, Mrs. Lillie C. Godwin. At the end of the year 1919 Mrs. Godwin owed him a balance of $200.00, and about that time the home on the estate lands was destroyed by fire; and thereupon, to wit, on February 14, 1920, Lillie C. Godwin, Fred B. Godwin and John C. Godwin executed to Mr. Jones a mortgage covering their undivided interests in the lands above mentioned, securing a note in the principal sum of $2,250.00

due October 1, 1922, with interest after maturity at the rate of eight per cent per annum, payable annually. This mortgage was given to secure the balance due on the account and also to secure advances to be made, and which were subsequently made, for rebuilding the house and for the farming operations on the premises.

On October 24, 1921, the indebtedness to Mr. Jones had increased, and by way of additional security Lillie C. Godwin, Fred B. Godwin, John C. Godwin and Annie L. Godwin executed a mortgage on their interests in the estate lands to Mr. Jones, securing a note due October 1, 1922, in the principal sum of $1,410.00, with interest after maturity at the rate of eight per cent per annum, payable annually.

On June 4, 1925, Miss Pearl Godwin executed a mortgage to her mother, Mrs. Lillie C. Godwin, on her interest in the estate lands, securing notes of the same date in the principal sum of $300.00, bearing interest from date at the rate of eight per cent per annum. This mortgage, together with the notes secured thereby, was immediately assigned by Mrs. Godwin to Mr. Jones for moneys advanced by him for the education of Miss Pearl.

While the three mortgages above mentioned purport to secure certain notes, it is admitted that they were actually intended to, and did in fact, secure a running account on the books of Mr. Jones, who made advances by way of money and supplies from time to time during the years 1918 to 1932, both inclusive, the account consisting mainly of cash advances and fertilizers; but there were some other items of supplies. The advances appear to have been made as they were required, and during the fall of each year payments were made on the account consisting principally of the proceeds of sale of the crops raised on the farm. It is admitted that crop and chattel mortgages were also given each year providing for interest at the same rate, but, as above indicated, the real estate mortgages in question were treated by all the parties concerned as collateral security to the account carried by Mr. Jones on his ledger. It seems to have been the

understanding between Mr. Jones and Mrs. Godwin that as the children became of age they would mortgage their interests to him so that he might be assured of protection, but three of the children never executed any such mortgages. Hence the aggregate amount of the interests covered by the three mortgages is 78/96 of the fee; and the remaining interests are not affected by this suit.

On January 1, 1933, according to the ledger of Mr. Jones, there was a balance due on the account of $8,739.38, and on or about the 26th day of June, 1934, this action was commenced for the foreclosure of the three mortgages in question. After the filing of the answer the cause was referred to C. W. Muldrow, Esq., Master, and after some testimony had been taken by him he allowed the defendants to amend their answer so as to set up usury both as a defense and by way of counterclaim, and a reply to the counterclaim was duly filed.

A considerable mass of testimony was taken before the Master, and in due course he filed his report dated October 24, 1936, finding among other things that Annie L. Godwin was an infant at the time she executed the mortgage dated October 24, 1921, and that the same not having been ratified after she reached her majority her interest was free from any lien or claim in favor of the plaintiff. The Master also found that usury was charged and collected and that after deducting twice the amount received in respect of interest the plaintiff was due the defendants on their counterclaim the sum of $2,807.24.

Upon exceptions to the Master's report the cause came on to be heard before Hon. E. C. Dennis, Circuit Judge, who in a very carefully considered decree overruled the findings of the Master in the particulars mentioned and held that although Miss Annie L. Godwin was an infant at the time the mortgage was executed she had failed to disaffirm the same and that since more than ten years had elapsed her defense of infancy was barred by laches and the statute of limitations; and Judge Dennis further held that there was

no agreement for the payment of usurious interest and that none had in fact been received, and that the defendants were due to the plaintiff on the mortgages the sum of $9,208.00, as of January 10, 1936, and he rendered his decree for fore-closure accordingly, including therein attorneys' fees and costs; and this appeal is from that decree.

There are ten exceptions but counsel for the appellants and for the respondent agree that the questions for deter-mination by this Court are as follows, and they will be con-sidered by us *seriatim* to wit:

1. Is the appellant Annie L. Godwin bound by the execu-tion of the mortgage dated October 24, 1921?

2. Was there an agreement or contract whereby the re-spondent was to receive from appellants a usurious rate of interest?

3. Did respondent actually receive from appellants any usurious interest?

4. What is the amount due between the parties after in-voking the forfeiture and penalty provided by the usury statute?

There were two mortgages in the principal sum of $1,410.00 executed, which resulted in some misun-derstanding, although the transaction was entirely free from any sort of wrongdoing. The first of these mort-gages was dated September 21, 1921, and apparently there was some error in its execution, hence another mortgage of the same purport and solely by way of substitution for the former was executed on October 24, 1921; and this is, of course, the mortgage being foreclosed. The evidence is quite clear that Miss Annie L. Godwin executed the mortgage, but she did not become of age until April 21, 1922; hence she lacked a few months of reaching her majority when the mortgage was given. She admits that she failed to inform Mr. Jones that she did not consider herself bound by the mortgage until eleven years after its execution; and at the time this suit was brought she had been of age more than twelve years. Under these circumstances we think the Cir-

cuit Judge was clearly right in holding that she was bound by the mortgage and that her defense of infancy was barred both by laches and the statute of limitations, especially since with full knowledge of her rights she acquiesced therein, from which acquiescence assent may be fairly inferred.

Mr. Jones undoubtedly made the advances to Mrs. Godwin in good faith to enable her to restore the home on the premises (which by the way was twice burned and rebuilt) and to operate her farm so as to support herself and her infant children. The mortgage signed by Miss Godwin was, therefore, certainly not void but only voidable, and if disaffirmance was intended, then the act of disaffirmance should have been done within a reasonable time after the disability of infancy ceased. It was held in the old case of *Norris v. Vance*, 3 Rich., 164, 165, that there may be confirmation of an infant's act in either of three ways:

"There must be, after he attains maturity, and with a full knowledge of his rights, one of these three things, viz.: (1) acquiescence, from which assent may be fairly inferred; (2), an adequate benefit enjoyed, which has grown directly or indirectly out of the contract; (3), some direct act of express assent."

And in the case of *Bossard v. White*, 9 Rich. Eq., 483, 499, Chancellor Dargan said: "An unreasonable delay after the removal of the disability, amounts to acquiescence, and acquiescence is affirmation." The principles laid down in these cases are sustained and confirmed in the later cases of *Ihley v. Padgett*, 27 S. C., 300, 3 S. E., 468, and *Smith v. Williams*, 141 S. C., 265, 139 S. E., 625, 54 A. L. R., 964.

It is contended by the appellants that there is nothing in the record to show that respondent had been induced by the representations, conduct or silence of Annie L. Godwin to change his position in any respect or to do any act to his detriment; but they must overlook the significant fact that the evidence is conclusive that a large part of the advances made by Mr. Jones was made by him *after Miss Annie be-*

*come of age,* and so presumptively on the faith of this mortgage as well as the others; and during the whole of the period she remained silent. In the case of *Smith v. Williams, supra* (page 632), the Court quotes with approval the following excerpt from Pomeroy:

"Acquiescence is an important factor in determining equitable rights and remedies, in obedience to the maxims, 'He who seeks equity must do equity'; and 'He who comes into equity must come with clean hands.' Even when it does not work a true estoppel upon rights of property or of contract, it may operate in analogy to estoppel—may produce a *quasi*-estoppel—upon the rights of remedy."

Section 7048, Code, 1932, requiring written ratification of certain contracts of infants, is relied on by counsel for appellants, but as was said in the case of *Beam v. McBrayer,* 132 S. C., 72, 128 S. E., 34, an infant after attaining full age "could be estopped by conduct to disaffirm the contract *or to claim the benefit of the statute"* (page 35). (Italics added.) We are in full accord with the Circuit Judge on this phase of the case, and hence the first question under consideration must be answered in the affirmative.

The remaining questions all relate to the claim of usury. The usury statute is embodied in Section 6740, Code, 1932, which is as follows:

"*Usury.*—Any person or corporation who shall receive, or contract to receive, as interest any greater amount than is provided for in the preceding section shall forfeit all interest, and the costs of the action and such portion of the original debt as shall be due shall be recovered without interest or costs, and where any amount so charged or contracted for has been actually received by such person or corporation, he or she, or they shall also forfeit double the total amount received in respect of interest, to be collected by a separate action or allowed as a counterclaim in any action brought to recover the principal sum."

As was held by Judge Dennis, it is clear that this section provides for two penalties; the first being that if one shall receive, or *contract to receive,* as interest more than the legal rate (which at the times in question in this case was seven per cent per annum, or not exceeding eight per cent. on written contract), then all interest shall be forfeited and the costs of the action; and only the balance of the original debt can be recovered.

The second penalty is forfeiture of double the total amount actually received in respect of interest, to be recovered in a separate action or allowed as a counterclaim.

If there was an agreement or contract for a usurious rate of interest, whether there was any interest actually collected or not, the first penalty would fall thereon, to wit, the forfeiture of all interest and the loss of costs. Hence we shall now consider the second question:

Was there an agreement or contract whereby the respondent was to receive from appellants a usurious rate of interest?

The original ledger containing the account, which was introduced in evidence, was filed with this Court for its inspection. It is a rather small single entry ledger (being no doubt the book of original entry), very neatly kept and easy to understand. And the most casual examination thereof will show that much excessive interest was charged thereon. On substantially all of the cash items, no matter at what date during the calendar year the advances were made, there is immediately charged the sum of eight per cent, which would represent a full year's interest, but at the end of each calendar year the balance is brought down and there is immediately charged eight per cent. on such balance. By way of illustration: In the year 1923, $90.00 was advanced on September 5th and the charge of eight per cent., $7.20, was immediately made. On October 12th of that year $5.00 was advanced, and a charge of eight per cent., amounting to 40 cents, was immediately made; and on December 15th of that year $50.00 was advanced, and a

charge of eight per cent., amounting to $4.00, was immediately made. On January 1, 1924, a balance of $2,374.94 was brought down, to which was immediately added a charge of eight per cent., amounting to $190.00. This plan was continued throughout the entire time the account ran, and there is no doubt whatever that the interest charges were considerably in excess of eight per cent. per annum, payable annually. The mere entry of interest charges on an account, not assented to by the debtor, would not be sufficient to make a contract to receive unlawful interest. 66 C. J., 198-199. The minds of the parties must meet before there can be any contract. But in the case at bar the plaintiff himself definitely established a contract by his own explicit testimony, for he says:

"Our understanding was, it was not exactly an interest rate. Mrs. Godwin got advances from me from time to time, and was to pay me eight cents on the dollar for current bills, with eight per cent interest for any carry-over * * *.

"Q. Did she agree to pay these various amounts on the books you got charged against her? A. Absolutely."

The conclusion which appears to be irresistible is that the charges of interest made by Mr. Jones on his ledger were in accordance with his agreement with Mrs. Godwin. In other words, there was a contract to receive illegal interest. It therefore follows that the penalty provided in the first part of the usury statute is inescapable, and that the plaintiff cannot collect more than the actual balance due on the principal without interest, attorneys' fees or costs. It should be stated in this connection, however, that the record does not indicate the slightest spirit of oppression on the part of Mr. Jones as a creditor. On the contrary, he treated Mrs. Godwin with the utmost consideration, and doubtless made advances at times when she might have found it difficult or impossible to procure them elsewhere. And it is admitted that prior to the institution of this action.he offered to accept $2,500.00 in full settlement of the indebtedness. The usurious contract was very probably made without a

clear comprehension that it was illegal, for as Mr. Jones says, it was not considered as "exactly an interest rate."

In this connection, it is even claimed by appellants that the legitimate profit made by Mr. Jones on the sale of the fertilizers over a period of years, amounting to $509.04, should be considered as usury; but an analysis of the facts will, we think, demonstrate that this view is erroneous. Mrs. Godwin from year to year purchased her fertilizers from Mr. Jones. These fertilizers were charged on the account and no interest was added, but of course the items included a profit, amounting according to the auditors to about 17.4%, which does not appear to be exorbitant, even if that were a relevant consideration. Mr. Jones purchased the fertilizers from different companies, and in each case he had the company ship the goods to Mrs. Godwin and send him the invoices. This was in truth and in fact a purchase by Mr. Jones and a sale by him to the defendants, and it was perfectly proper for him to charge a profit. *Cohen v. Williams,* 164 S. C., 499, 162 S. E., 758.

It will be observed that Mrs. Godwin had no dealings whatever with the fertilizer companies. These transactions were essentially different from those involved in the case of *Osborne v. Fuller,* 92 S. C., 338, 75 S. E., 557, 42 L. R. A. (N. S.), 1058, where a landlord gave a tenant orders upon which the tenant purchased goods from merchants, and the goods were paid for by the landlord who added a charge of 20%, although the tenant testified that he was only to pay the cash price of the goods plus eight per cent. interest. It was apparent under the facts of that case that the orders were supposed to be equivalent to cash items, and the tenant dealt with the merchants from whom he actually purchased the goods. We are persuaded that the profit received by the plaintiff here on the sale of the fertilizers cannot be considered usury.

Having held that there was a usurious contract as to the cash items, and so answering the second question affirmatively, we come to the consideration of the third question:

Did respondent actually receive from appellants any usurious interest?

As has already been stated, the payments made on the account were principally the proceeds of the sale of crops raised on the farm, and they are in varying sums, not a single one being made as or in respect of interest. Mrs. Godwin testified as follows:

"Q: When you sent money to Mr. Jones, what did you tell him to do with that money? A. I said credit to my account."

Where a debtor makes a payment specifying that it is *as* or *for* interest, then of course the creditor would be held to have received a payment of interest. For example, in the case of *Ehrhardt v. Varn,* 51 S. C., 550, 29 S. E., 225, there was testimony in behalf of the creditor that "all payments indorsed were payments on interest * * * these amounts were received as interest calculated at 10 per cent" (page 226), and in the case of *Earle v. Owings,* 72 S. C., 362, 51 S. E., 980, the plaintiff himself testified that he charged and collected interest at ten per cent.

But where, as in the case at bar, there was no payment specified to be interest, and there was no payment made or received as representing interest, but merely a general credit on account, it cannot be said, either in law or in fact, that the creditor has collected or received any interest unless and until the payments exceed the amount of the sum loaned. A statute of New Mexico prescribed a rate of interest and simply forbade the taking of more, but provided that the contract might be good for what could lawfully be taken. In construing this statute the Supreme Court of the United States in the leading case of *McBroom v. Scottish Mortgage & Land Investment Company,* 153 U. S., 318, 14 S. Ct., 852, 856, 38 L. Ed., 729, said:

"And interest cannot be said to have been collected or received in excess of what may be lawfully collected and received until the lender has, in fact, after giving credit for

all payments, collected or received more than the sum loaned, with legal interest."

In support of this conclusion the Supreme Court of the United States cites with approval, among other authorities, the Massachusetts case of *Stevens v. Lincoln,* 7 Metc., 525, and the case of *Wright v. Laing,* 3 Barn. & C., 165; and as was said in the *Massachusetts case* where a payment is made on account "the law will apply a payment to the valid demand rather than to the illegal one"; and in the latter case Chief Justice Abbott said that "where a person has two demands, one recognized by law, the other arising on a matter forbidden by law, and an unappropriated payment is made to him, the law will afterwards appropriate it to the demand which it acknowledges, and not to the demand which it prohibits." These holdings are certainly sound in principle and in accordance with the great weight of authority. 66 C. J., 280. This doctrine is clearly recognized in our own case of *Tate v. Lenhardt,* 110 S. C., 569, 96 S. E., 720, where the Court says (page 722):

"But there was not a particle of evidence that any of the payments was paid as interest. So far as it appears, not one of them was paid as interest, but each was made simply as a payment on the notes."

Hence it was held that no usurious interest was received.

The appellants rely strongly on the case of *People's Federation Bank v. English,* 133 S. C., 129, 129 S. E., 156, but in our view this case really applies the principle above mentioned, to wit, that a presumption in favor of the payment of a *legal* obligation should be indulged in order to sustain the transaction and to defeat the claim of usury. This particular case involved two payments made on the same day, one being in the sum of $76.00, as interest in advance, and the other being the sum of $100.00, on account of principal. If the principal payment had been made first the transaction might have been usurious, but the Court held (page 158), that there was no usury because there was a presumption "growing out of recognized business dealings" that the in-

terest was first paid. Certainly the Court will indulge no presumption in favor of any *illegal* conduct.

Appellants also rely upon the rule for calculating partial payments which requires credits first to be applied to the interest due, and this .rule, of course, is entirely proper to determine the balance due on an obligation where there is no question about the legality of the interest rate; but it manifestly has no application where the interest rate is illegal. The law will certainly presume that the creditor intended to apply a payment to a legal obligation rather than to an illegal one.

As an additional consideration, it may be observed that the burden was upon the appellants to establish their contention of usury. *New England Mortgage Security Co. v. Baxley,* 44 S. C., 81, 90, 21 S. E., 444, 885; *Cohen v. Williams,* 164 S. C., 499, 162 S. E., 758. And besides, the usury statute being highly penal it must be strictly construed, and the case must be clearly shown to come within its terms. *Butler v. Butler,* 62 S. C., 165, 40 S. E., 138; *Peoples Bank v. Perritt,* 114 S. C., 362, 103 S. E., 711.

Mr. Jones advanced, including cash, fertilizers and merchandise, the total sum of $15,642.79. He has received payments aggregating $12,187.89, leaving a balance on account of principal, without any interest whatever, of $3,454.90. These figures are in accordance with the statements made by the auditors for the respective parties. Hence so far from any interest having been received by the plaintiff there is a balance due on the principal alone of $3,-454.90; and hence the third question is answered in the negative. And this supplies the answer to the fourth question involved in this appeal, to wit, what is the amount due between the parties after invoking the forfeiture and penalty provided by the usury statute; the answer being $3,454.90, which the plaintiff is entitled to recover without interest, attorneys' fees or costs.

It, therefore, follows that the decree of the Circuit Court should be modified so as to reduce the amount of the judgment in favor of the plaintiff against the defendants to the sum of $3,454.90, and to provide for the recovery of that amount alone without interest, attorneys' fees or costs; and since the decree provided for the sale of the interest of defendants in the premises on October 4, 1937, and that the purchaser be put in possession not later than December 1, 1937, the same should be further modified so as to provide for such sale on any convenient salesday subsequent to the filing of the remittitur herein, after due advertisement; and that the purchaser be let into possession upon production of the Master's deed, in accordance with law and the practice of the Court.

The judgment of the Circuit Court, as *modified* by this opinion, is affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM, BAKER and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.