PELZER, RODGERS & CO. v. STEADMAN.

1.  The construction of a written paper is a question of law for the court, and not a question of fact.
2.  A surety is a favorite of the law with certain established rights which must be observed by the creditor, but a written contract cannot be construed in one way as against the principal debtor, and in another as against the surety.
3.  Therefore, where a husband contracted for an advance of $2,000, which he agreed to repay on a day named, and also to ship to this creditor all cotton controlled by him during the year, to be sold on commissions, and the wife mortgaged her separate property to secure the performance of this agreement, the creditor, in the absence of directions from the principal debtor, might apply the proceeds of cotton so shipped (which proceeds exceeded $2,000), first to the credit of other indebtedness of the principal debtor, and then for a balance remaining due on the account for advances, the creditor could foreclose the mortgage given by the wife as surety.

4. Where a creditor has three accounts for three different periods of time open upon his books against the same person, for one of which he holds the mortgage of a surety, he may apply to either of these three accounts unappropriated payments made by the principal debtor.

5. Where a sealed note is taken for the aggregate amount of three several accounts, the law, in the absence of testimony, will imply satisfaction, but such implication may be rebutted by testimony, as in this case.

6. A plea of usury being admitted, judgment should be rendered for the principal of the debt, without interest or costs.

Before WITHERSPOON, J., Barnwell, March, 1884.

This was an action to recover a debt and to foreclose the following mortgage, which was executed February 1, 1881 :

To all persons whom these persons may concern, I, Alice A. Steadman, of the county and state aforesaid, greeting :

Whereas Pelzer, Rodgers & Co., of the city of Charleston, in said state, have agreed to made advances to my husband, G. E. Steadman, doing business at Blackville, in said county, during the current year, to the amount of two thousand dollars upon the condition that the security hereinafter given should be provided for the payment of the amount that shall be so advanced, with interest from the date of the advances at the rate of seven per cent. per annum, and also commissions thereon at the rate of five per cent., as compensation to said Pelzer, Rodgers & Co. for their services in making said advances; the whole to be due and payable on the first day of November next. And whereas I am willing to assist the said G. E. Steadman in procuring said advances for the furtherance of his business by a pledge of my separate property.

Now, know ye, that I, the said A. A. Steadman, in consideration of the advances agreed to be made by the said Pelzer, Rodgers & Co. to the said G. E. Steadman, as aforesaid, and for the better securing the amount that shall be so advanced, with interest and commissions as aforesaid, and in further consideration of the sum of five dollars to me in hand paid at and before the sealing and delivery of these presents by the said Pelzer, Rodgers & Co. (the receipt whereof is hereby acknowledged), have granted, bargained, sold and released, and by these presents do grant, bargain, sell, and release to the said Pelzer, Rodgers & Co. [then follows description of the premises mortgaged, with habendum and warranty clauses]. *Provided always nevertheless,* and it is the true intent and meaning of the parties to these presents, that if the said G. E. Steadman shall well and truly

pay, or cause to be paid, unto the said Pelzer, Rodgers & Co. the said sum of two thousand dollars, to be advanced to him as aforesaid, with interest and commissions thereon as aforesaid, on the first day of November next, and shall further fulfil and perform his engagement with said firm (part of the consideration for said advances) to ship them as factors for sale on commission all the cotton he may control in his business during the current year, then this deed of bargain and sale shall cease, determine, and be utterly null and void; otherwise to remain in full force and virtue.

Other matters necessary to a full understanding of the case are stated in the opinion of this court. The Circuit decree, omitting so much as is restated in the opinion, was as follows:

There can be no doubt that the amount of advances to be made and to be secured by the mortgage is limited by the contract to $2,000 and interest during the year. It is equally clear that the time for payment is definitely fixed on the 1st November, 1881, after which advances could not be made upon the security of the mortgage. It was conceded upon argument that G. E. Steadman had shipped plaintiffs all of the cotton controlled by him during the year 1881. This condition of the mortgage having been fully complied with, plaintiffs can only look further to the mortgage as a security for the advances and interest provided for. Plaintiffs yield to defendants' plea of usury, the penalty for which by statute is a forfeiture of all interest and payment of costs.

There are three parties to the contract. The plaintiffs who agree to make the advances, the defendant, G. E. Steadman, the principal debtor, to whom the advances were made, and the defendant, Alice A. Steadman, who gives plaintiffs a mortgage of her separate property to secure payment of advances to be made to the principal debtor, etc. Payment, therefore, by the principal debtor discharges the collateral liability of the surety. The cases of *Witte* v. *Wolfe, Williams & Co.* v. *Vance & Moseley*, and *Hunter* v. *Wardlaw & Edwards*, cited by counsel, were cases between creditor and principal debtor, and the rights and liabilities of sureties or guarantors were not involved. Two objects appear to have been contemplated by the parties in this case, and both were to be secured by the mortgage. I. Advances to the principal debtor to a limited amount, and payable at a definite

time. II. The shipment of cotton by the principal debtor to the plaintiffs, as factors for sale on commission.

It being admitted that the cotton has been shipped to plaintiffs, the liability of the surety for the shipment of cotton must be held to be discharged. It remains to be determined whether or not the liability of the surety for advances to the principal debtor has been discharged by payments made by the principal debtor up to November 1st, 1881. It does not appear that the surety, at the time that she executed the mortgage, knew of the antecedent liability of her husband. It may be that, with this knowledge, she would have refused to pledge her separate property. It may be that plaintiffs then relied upon the cotton secured to be shipped as sufficient to pay the secured advances, any past balance, as well as any additional credit that they might extend to the principal debtor. If such was the expectation it has not been realized in consequence of the short crop of 1881, and not from any fault of the surety. If the contract was intended to secure balances due or balances to become due by the principal debtor, it should have been so expressed, as in the case of *Witte* v. *Wolfe*, 16 *S. C.*, 256.

Whilst the mortgage does not refer to the means to be employed by the principal debtor in paying for the advances, and whilst the two engagements in the mortgage appear to be distinct in terms, yet the mortgage that secures the advances also provides the means by which the principal debtor can pay for the advances. It is fair and reasonable to suppose that this fact was an inducement for the surety to pledge her separate property, especially when considered in connection with the further fact that the surety had taken the precaution to impose a limit both as to amount and the time for payment of the advances.

I must therefore conclude, under all the circumstances, that it was the intention of the parties that the advances should be made by plaintiffs to the principal debtor from February 1, 1881, to November 1, 1881, and that the payments made by the principal debtor during that period were to be applied first to the advances to the extent of $2,000 and interest secured by the mortgage.

It appears that plaintiffs advanced to G. E. Steadman,
from 1st February to 1st November, 1881 . . .   $4,006 69
That G. E. Steadman is credited with payments made
during same period . . . . . . . . . . . . . . .   2,728 55

                                              $1,278 14

In this view of the case it is not necessary to consider the effect
of the note for $3,432.55, executed by defendant, G. E. Stead-
man, June 30, 1882, to plaintiffs or the credit endorsed thereon
as to the liability of the surety.  Nor is it material to consider
the right of application of partial payments which cannot apply
in this case.  The factor's lien cannot prevail in this case to the
prejudice of the surety, it being held that, under the contract,
the shipments were first applicable to payments of advances and
interest.

It does not appear from the accounts or the testimony that a
greater rate of interest than seven per cent. per annum has been
charged or embraced in the note executed by the defendant, G.
E. Steadman, to plaintiffs.  This note embraces indebtedness
prior to the execution of the mortgage by the surety.  It was
intended to represent the balance of the liability by G. E. Stead-
man to plaintiffs.  After deducting the $1,714.63 credited on the
note there remains a balance of $1,826.70, with interest from
the 14th April, 1882, due by the defendant, G. E. Steadman, to
plaintiffs.

AS MATTER OF FACT.  I. I find that G. E. Steadman has
paid plaintiffs the amount of advances and interest and shipped
plaintiffs the cotton *secured by the mortgage of the defendant,
Alice A. Steadman.*  II. That the defendant, G. E. Steadman,
is individually indebted to plaintiffs in the sum of $1,826.70 with
interest from April 14th, 1882.

AS MATTER OF LAW.  I. I find that the defendant, Alice A.
Steadman, is not liable to plaintiffs upon the mortgage executed
February 1, 1882, and delivered to plaintiffs, and as the condi-
tions of said mortgage have been fulfilled, said mortgage, by its
terms, is void and of no effect, and should be delivered to the said
Alice A. Steadman to be cancelled.  II. That plaintiffs' com-

plaint should be dismissed as to the defendant, Alice A. Stead-
man, with costs.    III. That plaintiffs are entitled to judgment
against the defendant, G. E. Steadman, individually, for the sum
of $1,826.70 with interest from the 14th April, 1882.

It is therefore ordered, adjudged, and decreed that the plain-
tiffs' complaint be dismissed with costs as to the defendant, Alice
A. Steadman, and that plaintiffs do, within thirty days from the
filing and notice of this decree, deliver to the defendant, Alice
A. Steadman, the mortgage referred to in the complaint, to be
cancelled by the clerk of the court, who is hereby authorized and
directed to mark said mortgage satisfied.    It is further ordered,
adjudged, and decreed that plaintiffs have judgment with leave to
issue execution against the defendant, G. E. Steadman, for the
sum of eighteen hundred and twenty-six dollars and seventy
cents with interest thereon from the 14th April, 1882, with costs
as to said G. E. Steadman.

The exceptions raise only the points stated and considered in
the opinion of this court.

*Messrs. John J. Maher* and *Henderson Bros.*, for appellant.

*Messrs. H. M. Thompson* and *L. T. Izlar*, contra.

March 2, 1885.    The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.    In February, 1881, Pelzer,
Rodgers & Co., factors in Charleston, agreed verbally to make
advances to G. E. Steadman during that year, in money or sup-
plies, to the amout of $2,000, with interest from the dates of the
advances at seven per cent. per annum, and also commissions at
five per cent.    Steadman was a merchant at Blackville, S. C.,
dealing in cotton; and it was stipulated in the agreement, as a
part of the consideration thereof, that Steadman should send to
the factors, for sale on commission, all the cotton he might con-
trol in his business during the current year.    This agreement was
made upon the understanding that Mrs. Alice A. Steadman, the
wife of G. E. Steadman, to secure the performance of his portion
of the agreement, should execute a mortgage of her separate es-
tate to the factors.    Accordingly, in February, 1881, Mrs. Stead-

man executed to the plaintiffs the mortgage mentioned in the complaint, covering certain real estate in Barnwell County, in which mortgage, after reciting the agreement between the plaintiffs and Steadman, and expressing her willingness to assist him, she duly conveyed the property to the plaintiffs, with condition that the deed should be void if Steadman should pay, or cause to be paid, to plaintiffs, said sum of $2,000, on November 1, 1881, and should further fulfil his said engagement to ship to said factors, for sale on commission, all the cotton he might control in his business during the current year.

At the date of this mortgage it appears that Steadman was indebted to the plaintiffs in the sum of $946.95, balance on the accounts of the previous year; but whether Mrs. Steadman knew of this, is not stated. The plaintiffs advanced to Steadman, during the year $2,758.31, subject to a credit of $475.37 ; so that at the close of the business year, July 1, 1881, the accounts stood $946.95+$2,758.31=$3,705.26—$475.37=$3,229.89, to which interest was added to November 1, 1881, at which date total amount was $3,432.35, for which Steadman gave his note under seal, payable on November 1, 1881. This note embraced the $946.95 of the previous year, also advances under the agreement, $2,000, and additional advances $758.31, and interest from July 1, to November 1, 1881, less the credit of $475.37. On the note appeared a credit $1,714,65, dated April 14, 1882, which was a balance in favor of Steadman on transactions between July 1, 1881, and December, 1881.

Under these circumstances the action below was brought against G. E. Steadman and Alice, his wife, to recover against him individually the amount due for advances, and to foreclose the mortgage given by her. The defendant, Alice, answered, claiming that her husband had shipped to the plaintiffs all of the cotton under his control during the year, to an amount considerably in excess of the two thousand dollars, interest and commissions agreed upon, and therefore the mortgage was discharged. She further alleged that the agreement was usurious, as more than seven per cent. had been stipulated for on the advances. The defendant, Geo. E. Steadman, adopted the answer of his wife.

The case was heard by Judge Witherspoon upon testimony reported by the master.

It was conceded that Steadman had complied with his contract to ship all the cotton under his control, and that the proceeds of this cotton amounted to considerably more than the $2,000, secured by the mortgage. Nor was there any difference between the parties as to the amount remaining unpaid of the $2,000 secured by the mortgage, if the proceeds of the cotton should be applied first to the portions of the account, other than that. The vital question in the case, therefore, to Mrs. Steadman was how should this cotton money be applied; if to the mortgage, then her defence was sufficient and successful, but if to the entire account, then there was a balance due by her. There was nothing in the testimony showing that Steadman, the debtor, gave any directions as to the application of the proceeds of the cotton. He sent it forward under the agreement; it was sold by the factors, and the proceeds applied by them. It was contended, however, on the part of the Defendants, that the agreement, when construed with reference to the rights of Mrs. Steadman, as surety or guarantor, required the application of the proceeds of the cotton to the advances secured by her mortgage. On the other hand the plaintiffs claimed that there was no appropriation growing out of the terms or intent of these papers, of these proceeds, but that they were left open and to be applied in conformity with the principles of law governing such cases, which being applied, entitled the plaintiffs to a large decree, *i. e.*, the sum of $1,594.52, all interest being excluded under the plea of the admitted usury ; Steadman having failed to direct the application of the cotton, either when it was consigned or afterwards, and the plaintiffs having applied it first to the unsecured portion of the account.

His honor, Judge Witherspoon, concluding under all the circumstances, that it was the intention of the parties that the advances were to be made from February 1, to November 1, 1881, and that the payments made during that period, by the principal debtor, were to be applied first to the extent of the $2,000 and interest secured by the mortgage, and it appearing that Steadman was credited with payments during the same

period more than enough to extinguish the $2,000, found as matter of fact, that the mortgage was satisfied. He found also, as matter of fact, that Steadman was still due the plaintiffs individually the sum of $1,826.70. He therefore adjudged and decreed that the complaint be dismissed with costs as to the defendant, Alice Steadman, but that plaintiffs have judgment against G. E. Steadman for the sum of $1,826.70 with interest from April 14, 1882, and costs.

The appeal of the plaintiffs involves the finding of fact of his honor that the mortgage was satisfied, based upon the intent of the parties that the proceeds of the cotton should be applied to the $2,000. The defendant appeals from the finding of fact that he was indebted to plaintiffs in the sum of $1,826.70, and he also alleges error in that his honor decreed judgment against him individually for any amount in this action when it was upon a special agreement set forth in the complaint, which had been complied with, and therefore the outside indebtedness was not involved and should not have been adjudicated. Further, the defendant under the principle that a judgment may be sustained on appeal upon other grounds than those upon which it was based by the judge has urged that the debt of defendant was satisfied by the sealed note given by him in full of the account in June, 1881, and therefore the mortgage given to secure said account was extinguished, as held by the judge. And he also contended that the whole account was extinguished, and therefore there was no foundation for that portion of the decree which allowed judgment against Steadman.

This court has frequently declared that it will not disturb the findings of fact of the Circuit judge resting upon testimony, unless it is manifestly against the weight of the evidence; and if the finding here involved in the plaintiffs' appeal was a finding as the result of evidence introduced and directed to a question of fact, the rule referred to would apply. But it is manifest that this is not the case. The judge evidently reached his conclusion, not through the fact of payment proved by witnesses, but through the construction placed by him on the terms of the mortgage, showing, as he concluded, the intent of the parties; which required in his opinion the application of the proceeds of the cot-

ton to the $2,000 advance. Now the construction of a paper in litigation between parties is not a question of fact for the jury, but is always a question of law for the court. So that the finding of fact of the judge, as it is styled, on this subject, was really a finding of law, or at least the result of a finding of law ; and therefore it is before us as any other question of law, untrammeled by the rule referred to above.

It is practically conceded by his honor below that if this case was not complicated with the presence of Mrs. Alice A. Steadman, the surety, and if it was simply a case between creditor and debtor, under the law as laid down in *Williams & Co.* v. *Vance & Moseley*, 9 *S. C.*, 344, and *Bell* v. *Bell*, 20 *Id.*, 46, and other cases, there would be no difficulty whatever, as the facts would clearly entitle the plaintiffs to recover through a decree of foreclosure. But a distinction is attempted to be drawn between a case of that kind and this, because of the suretyship in this of Mrs. Steadman. Does that difference negative the application to this case of the principle which it is admitted would apply to the first ? It is true the law requires on behalf of the surety fair dealing between the creditor and debtor. It was said in *Tinsley* v. *Kirby*, 17 *S. C.*, 1, that in determining the liability of a surety it must not be forgotten that "he is a favorite of the law, and has the right to stand on the strict terms of his obligation when such terms are ascertained." Hence there can be no extension of time, not a moment, nor can there be the slightest change or alteration made in the contract without the knowledge and consent of the surety. Hence, too, all securities and collaterals deposited by the debtor with the creditor on account of the debt, must be held for the protection of the surety ; but we have found no case or principle which requires that the contract shall be construed in one way as against the principal and in another as against the surety.

Now what was the contract of Steadman ? It appears in the recitals of the mortgage, and it was simply to pay the amount to be advanced, $2,000, by November 1, 1881, thereafter, with interest and commissions, and to ship to the plaintiffs all the cotton under his control during that current year, to be sold on commission. Mrs. Steadman's mortgage was intended to secure

the performance of this contract on the part of her husband.   In other words, she bound her land to the twofold promise of Steadman, *i. e.*, that he would pay the $2,000, interests and commissions, by November 1, 1881; and also that he would ship all cotton to the plaintiffs, not for the payment of the $2,000, not as additional and collateral security thereto, but to be sold on commission.   The plaintiffs were satisfied with the mortgage of real estate as a security for the $2,000, and the stipulation as to the shipment of the cotton was evidently in furtherance and support of their business as factors, selling cotton and other produce on commission.   And if, as we have said, the contest here was between Steadman and the plaintiffs alone, there could not be a difference of opinion as to the construction of this contract, and no one would contend that either by the terms or the spirit of said contract could Steadman legally claim that the proceeds of the cotton should be applied to the $2,000 advance in preference to his other indebtedness to plaintiffs, if any.   Under the law he might direct such application, but in the absence of such direction he could not claim it as a matter of legal right growing out of the terms of the agreement.

Such being the proper construction of the agreement as between the original parties, where then is the equity of the surety? And by the term equity, let it be understood that we do not mean the unfortunate condition in which Mrs. Steadman has placed herself, at the solicitation perhaps of her husband—a hard case for her, no doubt, as she is likely to lose her home—but we mean that equity which flows from established equitable principles, and which the courts can administer.   We would not have been displeased to have found such an equity in the case, as we know how easy and natural it is for a wife to pledge her all in behalf of a failing husband, oftentimes without examination or reflection; but after carefully reviewing the whole case, we must say that we have not found it.   According to our opinion, the contract or agreement must be construed to mean the same thing with the surety as with the principal.   It is an entirety, and cannot bear a double signification.   As we construe it, there was no appropriation of the cotton to the advance of the $2,000 secured by the mortgage.   Hence in plaintiffs' failing to thus

apply it, it cannot be said that they have changed, altered, or modified the contract, or that they have diverted to other purposes securities or collaterals deposited or pledged by the debtor for its enforcement, to the injury of the surety, or that they have violated any other recognized equity of the surety. As to the application of partial payments by a creditor, in the absence of directions from the debtor, we need only to refer to the recent case of *Bell* v. *Bell*, 20 *S. C.*, 46.

This brings us to the question raised by the defendant, that the sealed note given by him June 30, 1881, and due November 1, extinguished the entire account, including that for the advance of $2,000, and therefore the mortgage was satisfied. The law upon that subject, as found laid down in the recent case of *Chalmers* v. *Turnipseed*, 21 *S. C.*, 126, after discussing the previous cases, is as follows: Where an equal or an inferior security is taken, a question of fact is raised as to the intent of the parties, with the burden of proof on the debtor to show that it was intended as payment, if he so claims; whereas when a higher security is taken, in the absence of testimony to the contrary the law will imply satisfaction. *Turnipseed* v. *Chalmers, supra,* and the cases there cited.

In the case before the court, it seems that a sealed note was taken, which was a higher security than the open account, and in the absence of testimony would imply satisfaction; but Steadman himself, in his testimony on the cross-examination, said more than once that this note was given to close the account. To use his own language, at one place he said: "gave them a paper to close the account, but whether it was a sealed note or not cannot remember." Now, does this come up to the law of *Gardner* v. *Hust*, 2 *Rich.*, 608, cited in *Turnipseed* v. *Chalmers*, where it is said "that in general the taking of a higher security is an extinguishment of the same, provided the higher security is accepted as satisfaction; and if not so accepted, then it is merely additional or cumulative security for the same debt"? With the evidence of the defendant, Steadman, before us, we think that the note was neither intended to extinguish the account nor was it accepted as payment and in satisfaction thereof, but was in-

tended, as Steadman says, merely to "close it" and to acknowledge its correctness, and must be regarded as cumulative security.

The second objection of defendant, which applies to the judgment against him individually, might and perhaps would be fatal had we sustained above the decree of his honor, the Circuit judge, as to the satisfaction of the mortgage; because then there would have been nothing left in the complaint upon which such a judgment could have been based, inasmuch as the complaint assumes that the credits of Steadman had been properly applied to the other account in excess of the $2,000. The plaintiffs, therefore, sued only for the amount remaining unpaid on the $2,000 advance secured by the mortgage, assuming that the balance of the account has been paid. We have reached the conclusion different from the Circuit judge that the $2,000 had not been extinguished, and it being a subsisting debt of Steadman, as well as secured by the mortgage of Mrs. Steadman, the plaintiffs are entitled to an individual decree against Steadman and also a foreclosure of the mortgage.

The usury is admitted, therefore all interest should be eliminated. This the plaintiffs have offered to do, by remitting all of the decree in excess of $1,594.52, which seems to be the principal of the amount really due, without interest. For this amount, we think the plaintiffs are entitled to judgment against G. E. Steadman without costs, and that the mortgage should be foreclosed for that amount.

It is the judgment of this court that the plaintiffs should have judgment against G. E. Steadman for $1,594.52, and also a judgment of foreclosure against Mrs. Alice A. Steadman for the same amount; the payment of one being the satisfaction of both, all without costs; and to this extent the judgment below is modified. Let the case be remanded to be carried out in accordance with the above.