## EXCHANGE BANK v. McMILLAN.

1. USURY.—A contract executed before enactment of the usury statute is not governed thereby.
2. USURY IN FOREIGN CONTRACTS.—If a contract is made in a foreign State, is to be performed in such State and is payable there, it is incumbent on him asserting usury to show under the laws of that State it is usurious.
3. ADMISSION OF LEGAL PROPOSITION IS NOT BINDING.—Usury is a mixed question of law and fact, and admission of counsel that a contract is usurious on a certain state of facts may be disregarded by the Court.
4. EXCEPTION TO MASTER'S REPORT.—Within discretion of trial Judge an exception to master's report may be permitted at the hearing.
5. SURETIES—PAYMENTS.—Further credit to principal debtor will not discharge surety in absence of an agreement to that effect, nor will

36—76

renewal of notes, nor taking additional indorsers, nor will the Court require payments made by the principal debtor applied to surety debt at instance of surety in absence of instructions by debtor at time of payment to so apply them, but any sums realized from securities to the surety debt must be so credited.

6. DISAFFIRMANCE OF CONTRACT BY MINOR—ESTOPPEL.—Under Code, 1902, 2656, a minor engaged in business in a foreign State and executing a mortgage there on land in this State, may disaffirm the contract here in foreclosure of the mortgage in the absence of a ratification in writing after attaining his majority. Such minor is only estopped from invoking the statute, where there is a showing that the creditor has been induced by his representations, conduct or silence to change his position or to do any act to his detriment.

7. REHEARING refused.

Before W. C. BENET, Special Judge, Marion, April, 1906. Modified.

Action by Exchange Bank of Fort Valley, Ga. against John P. McMillan *et al.* From judgment for plaintiff, defendants appeal.

*Messrs. Ferd. D. Bryant* and *Shand & Shand,* for appellants, cite: *As to disaffirmance of contract made during minority:* 16 Stat., 514; Code, 1902, 2656; Speers Eq., 385; 54 Miss., 323; 16 N. H., 385; 23 Me., 517; 69 N. Y., 553; 29 S. C., 419; 36 S. C., 549; 51 S. C., 467; 60 S. C., 380; 11 A. & E., 934; 1 Exch., 122; 10 Exch., 206; 3 Reed Stat. Frauds, secs. 1110, 1112. *The law of this State governs:* 3 H. L. Cas., 1; 14 Eng. L. & Eq., 247; Story on Conf. of Laws, 827; Brown on Frauds, sec. 136; 9 Bush., 460; 4 Am. R., 29. *Taking additional indorsers releases surety:* 17 Ga., 521; 5 E. & B., 82; 2 Eng. Rul. Cas., 692; 17 S. C., 4; 23 S. C., 590; 51 S. C., 124; 1 McC. Ch., 452; 3 Strob. Eq., 64; 9 Wheat., 706; 26 S. C., 612; 51 Ga., 205; 5 Md., 102; 1 Jones on Mtg., sec. 889. *Proceeds of collateral must be credited on the notes:* 2 Jones Mortg., sec. 909.

*Messrs. E. O.* and *M. C. Woods,* contra, cite: *As to ratification of contract by minor:* 16 Ency., 303; 56 Am. St. R.,

EXCHANGE BANK v. MCMILLAN.　563

38; 2 Bail, 490; 4 McC., 345; 2 Hill, 479; 2 Rich., 152; 9 Rich., 55; 27 S. C., 300; 33 S. C., 292. *Code 2156 refers to ratification of promises to pay and not to ratification of contracts:* 7 Wait. Ac. & Def., 138, 148; 3 S. C., 298; 26 S. C., 80; Smith on Con., 152; 16 Ency., 302; 61 S. C., 398. *This is a Georgia contract and the common law prevails under proof:* 66 S. C., 98; 62 S. C., 171; 39 S. C., 490; 22 Ency., 1336; 28 Am. Rep., 241; 2 Am. R., 271; 68 S. C., 236; 53 S. C., 76; 55 S. C., 316. *Appellants were not parties to original contract and no usury was charged them:* 27 Ency., 956; 29 S. C., 508; 47 S. C., 406; 53 S. C., 117; 58 S. C., 345; 62 S. C., 178. *Notes sued on were on lawful rate:* 37 S. C., 579; 49 S. C., 45. *Bank cannot apply deposit to debt:* 69 S. C., 374. *Creditor may extend further credit to principal debtor and not release surety:* 69 S. C., 168. *Parol evidence not admissible to show note under seal was given on agreement to be renewed:* 13 S. C., 240; 1 Green., 275; 42 S. C., 8; 39 S. C., 290; 33 S. C., 243; 29 S. C., 345; 69 S. C., 93.

The opinion in this case was filed March 22, but remittitur held up on petition for rehearing until

April 19, 1907. The opinion of the Court was delivered by

MR. ALLEN J. GREEN, ACTING ASSOCIATE JUSTICE *in place of* ASSOCIATE JUSTICE WOODS, *disqualified.* This action was brought in the Court of Common Pleas for Marion County against the defendants for judgment upon four notes and for the foreclosure of a mortgage securing the same, executed by the defendants, J. P. McMillan, W. A. McMillan and J. Sydney McMillan, embracing their interests in certain lands in Marion County, this State. Upon the trial W. A. McMillan was discharged of liability, so he is out of the case. The notes are dated 22d November, 1897, and payable to the order of the plaintiff at the Exchange Bank of Fort Valley, Ga., and are as follows:

Four hundred and eighty-one and 14-100 ($481.14) dollars payable on the first day of April, 1898.

Twelve hundred and seventeen and 16-100 ($1217.16) dollars payable on the first April, 1898.

Twenty-seven hundred and seventy-five and 60-100 ($2775.60) dollars payable on the 1st January, 1898.

Twenty-eight hundred and fifty-two and 70-100 ($2852.70) dollars payable on the 1st day of October, 1898.

All these notes bear interest after maturity at eight per cent. and were all executed by the defendants and delivered to the plaintiff at Fort Valley, Ga.

The last three notes are indorsed by other parties.

The cause was referred to the master to take the testimony and report his conclusions of law and fact, and came on to be heard by the Court upon the report of the master, testimony and exceptions and resulted in a decree confirming the findings and conclusions of the master, except in so far as he allowed the claim of usurious interest and as to his computation of the amount due upon the notes and mortgage, these findings were overruled and judgment ordered against the defendants, except W. A. McMillan, for the full amount of the notes, interest and attorney's fees, with interest from the 15th April, 1906; and the interest of J. P. McMillan and J. Sydney McMillan in the mortgaged premises ordered to be sold in satisfaction thereof.

From this decree the defendants appealed to this Court upon numerous exceptions.

At the hearing in this Court the appellants abandoned all the exceptions except those alleging error in the Circuit Court, as to the question of usury, discharge of surety, and the plea of infancy on behalf of the defendant J. Sydney McMillan; these questions will be considered in their order.

1. As to the question of usury: We concur with the Circuit Judge, there was no usury. The contracts sued on were entered into prior to the act of 1898, now sections No. 1661 and No. 1664, of the Civil Code, and by the express terms of section No. 1664 and the authority of *Tobin* v. *McNab*,

53 S. C., 73, 30 S. E., 827.; and *Loan and Investment Company* v. *Logan,* 55 S. C., 295, 33 S. E., 372, are excluded from the operation of these statutes; they are, therefore, governed by the law of force prior to that time.

Usury is purely statutory and is unknown to the common law, and the burden of proving the facts constituting usury rests upon the defendants who plead it. When plaintiffs introduced the notes in evidence showing that the contract was made in Georgia, to be performed in Georgia, and payable to a Georgia corporation resident in Georgia, the presumption that it was a Georgia contract attached, and unless rebutted by the defendants became conclusive. It was then incumbent upon the defendants in order to establish their plea to show by evidence that under the laws of Georgia the transaction was usurious, failing in this the common law applied, and under this law there is no usury. *Rosemand* v. *R. R.,* 66 S. C., 198, 44 S. E., 574; *Association* v. *Rice,* 68 S. C., 236; 47 S. E., 63; *Butler* v. *Butler,* 62 S. C., 177, 40 S. E., 138.

But it is urged that the statement in the master's report to the effect that plaintiff's counsel admits that the transaction is usurious and the law of this State governs, unexcepted to and unappealed from, is conclusive in this case.

Usury is a mixed question of law and fact, the necessary facts being proven, the law applies and the legal results follow; so also whether the contract is foreign or domestic in the particular case is dependent upon the facts admitted or proved. In the trial of causes counsel has the right to admit facts, and such admissions will be conclusive unless withdrawn before judgment in time to allow the opposite party to supply their place with proof; but not so with admissions of law. It is the duty of the Court to know and apply the law to the facts as proven, and no erroneous admission of law can be conclusive before judgment, but the Court may,

upon its own motion, correct it.   I Wharton Evidence, 276-283 ; 2 Wharton Evidence, 1189 ; 4 Cyc., 950.

There is nothing in the record to show the basis of this statement by the master, and while it is true no specific exception appears to have been filed to the report on this point, it was a matter within the discretion of the Court, upon the hearing, to permit such exceptions to be then taken and to adjudge accordingly.  *Brown* v. *Rogers,* 71 S. C., 512, 51 S. E., 259.   And that this was done is manifest from the decree.   These exceptions were overruled.

2. The question of the discharge of the surety arises out of the following state of facts : The defendant, J. P. Mc-Millan, then, and for some time prior, an employee of the Fort Valley Manufacturing Company, a Georgia corporation engaged in business in Georgia, entered into negotiations for the purchase of the plant, stock and business of the corporation ; which was consumated by the execution and delivery to the plaintiff of the four notes and the mortgage now in suit.   The financial business of the company had been done with the plaintiff bank, who was then a large creditor of the manufacturing company, and also held a large majority of its stock in pledge to secure indebtedness of the owners of the stock for the purchase of the same, for this reason the notes were made direct to the plaintiff ; the two smaller notes covering the price agreed upon for the stock with interest to their maturity were respectively substituted for the notes held by the bank for the two blocks of stock ; the larger of the two being first indorsed by Dasher and Mathews, the then respective owners of the stock, and the two larger notes covering the indebtedness of the manufacturing company to the plaintiff bank, with interest added to their maturity, were collateral security for the payment of the company's indebtedness to it in addition to the securities of the manufacturing company then held by the bank.   The transaction was consummated on the 22d of

November, 1897, and the manufacturing company turned over to the purchasers.

Sufficient appears in the evidence to show that at the time of this transaction the bank held a mortgage upon the plant, &c., of the company as security in part of the indebtedness of the company to it; this mortgage was foreclosed by the Georgia Courts before the commencement of this action and $1125.75 the net proceeds of the mortgaged property realized from the sales of the property under the decree of the Georgia Court, paid over to the plaintiff on the 1st March, 1901, by the receiver of the manufacturing company.

On the pass book of the manufacturing company with the bank appears under date of 23d November, 1897, the following entries, debit, "ck payment note and int. $3811.10," credit, "dep. note $5138.07."

It appears from the testimony of J. P. McMillan that the manufacturing company continued in business running a current account with the plaintiff until June, 1899, at which time it became insolvent and suspended, and the company was then indebted to the plaintiff upon two notes of the company aggregating $6616.79 less a credit of $800.00 in addition to the amounts covered by the notes in this suit.

Upon this state of facts it is insisted that the notes being collateral to the indebtedness of the stockholders and the manufacturing company to the plaintiff, the makers thereof occupy the position of sureties, and as such are discharged by the plaintiff taking additional securities in the indorsements stated, by giving further credit to the manufacturing company, the principal debtor, and by the pass book which it is insisted amounted to a payment of the indebtedness by the manufacturing company and a release of its mortgage.

The rule undoubtedly is that a surety is bound by the terms of his contract, and if the creditor by agreement with his principal debtor without consent of the surety varies these terms, the surety is discharged, although the change was not in fact injurious to the surety. *Gardner* v. *Gardner,* 23 S. C., 590.

The right of the surety to be subrogated to all the securities that the creditor has, and the rule that he will be discharged if the creditor releases them, to the extent of the value of the security released, is also familiar doctrine; but in order to affect the discharge, the acts complained of on the part of the creditors must be of a positive character or be an *"omission to do an act when required which equity and his duty to the surety injoined it upon him to do and which omission is injurious to the surety."* *Lang* v. *Brevard,* 3 Strob, Eq., 59; *Smith* v. *Tunno,* 1 McC. Ch., 443; Stearns Law of Suretyship, page 137, section 198; Brant on Suretyship, &c. sec., 370.

In the application of the rule a written contract cannot be construed one way against the debtor and another way against the sureties. *Pelzer, Rogers & Co.* v. *Steadman,* 22 S. C., 279.

The indebtedness of the manufacturing company being ascertained and placed in the notes, the contract of the sureties is, that they would pay this ascertained amount at the time specified; and upon their execution and delivery the notes became the property of the bank (plaintiff) and the liabilities of the parties fixed, which could only be discharged by payment. *Carson* v. *Hill,* 1 McM., 81.

It is the variation of this contract that will discharge the sureties. The discount of its own property by the bank could only produce its own money, and by no possibility produce payment of the note or in any manner involve a change in the terms of the contract, but at most could operate as an extension of credit to the manufacturing company with the bank to the extent of the difference between the amount of the check charged and the discount of the notes credited. Further credit will not discharge the surety in the absence of an agreement to that effect, nor will the Court require payments made the creditor in the current business of the principal to be applied to the surety debt in the absence of a direction to that effect by the debtor at the time of the pay-

ment.   *Rouss* v. *King,* 69 S. C., 168, 48 S. E., 220; *Pelzer, Rogers & Co.* v. *Steadman, supra.*

The amount due upon the old note alleged to be delivered up is included in and a part of the amount due on the notes in suit and the securiey—the mortgage—held for the old note was still held for the new, the notes therefore may be considered as renewals of the old note, and the surrender of the old note would not affect a mortgage given to secure the payment of the *debt* evidenced thereby.   So also the additional indorsers on the note could only operate as additional security and in no way change the contract.   A creditor taking collateral security from his debtor will not release the security on the original debt.   *Exors. of Green* v. *Blachford,* 1 Des., 430; *U. S.* v. *Hodge,* 6 How., 279; 27 A. & E. Ency. of Law, 2 ed., 516.

It appears, however, from the testimony of plaintiff that the old mortgage that was held by the plaintiff had been foreclosed in the Georgia Courts, and the sum of $1125.75, the net proceeds of the sale of the property, covered thereby, paid over to the bank (plaintiff) on the 1st March, 1901; this sum should be credited on one of the larger notes as of the date of its payment, upon the familiar principle of the subrogation of the sureties to the securities held by the creditor for the payment of the principal debt; and to this extent the exception raising this point must be sustained.

3. The defendant, J. Sydney McMillan, was a minor at the time of the execution of the notes and mortgage, and attained his majority on October 19th, 1898, after the maturity of the notes, and by his answer repudiates the contract on the ground of his infancy.   It appears he was engaged with his brother and co-maker, J. P. McMillan, in the business of the manufacturing company from the reorganization of the company in 1898 to at least January, 1899, holding the position of vice-president and superintendent of the manufacturing company and also holding ten shares of an issue of thirty shares of additional stock; but it does not appear whether he commenced his employ-

ment before the reorganization. It further appears that it was agreed between his brother and himseif that no salary should be fixed for the time being, but that each would only draw necessary expenses from the manufacturing company and that salaries would be fixed later as of the date of the reorganization; under these circumstances the master and the Circuit Judge held that the plea of infancy could not avail, and adjudged accordingly, this ruling is the assignment of error.

The contract of the defendant, J. Sydney McMillan, was not void but voidable, it is immaterial whether he purchased the property or that it was purchased with his knowledge and consent for his benefit, and at the time he was within a year of his majority. Being in law a minor he had the right in law to affirm or rescind his contract upon reaching his majority. *Scott* v. *Scott,* 29 S. C., 414, 7 S. E., 811. As said in this case at page 419, "confirmation is a question of intention and whether that intention exists or not must generally be inferred from circumstances. In a note to *Ihley* v. *Padgett, supra,* in the Southern Eastern Reporter, Vol. 3, 471, the principle is thus stated: 'If an infant continues after arriving at full age to occupy a position which is only explicable upon the supposition that he intended to stand by a contract executed during minority such contract will be deemed ratified.' "

Such was the law of this State prior to the act of 1878, now section No. 2656 of the Civil Code; that section provides: "No action shall be maintained whereby to charge a person upon any promise made after full age to pay any debt contracted during infancy or upon a ratification after full age of any promise (except upon contracts for necessaries) made during infancy, unless such promise or ratification shall be made by some writing signed by the party to be charged therewith." If this section applies to this contract the defendant must be discharged, for it is not contended there was any writing signed by him as provided in the foregoing section.

At the outset, we are confronted with the case of *Salinas* v. *Bennett,* 33 S. C., 285, 292, 11 S. E., 968, and *Ihley* v. *Padgett,* 27 S. C., 300, 3 S. E., 468, in both of which were decided since the act of 1878, and both of which the minor was held bound without the writing required by the statute. An examination of these cases will show that in the former the result alone was concurred in and the decision may well be rested upon the ground that the debt sought to be enforced was a partnership debt and the property mortgaged to secure it was partnership property, for Justice McGowan says: "Keeping in mind that the lot mortgaged was partnership property, there can be no difficulty. It is not denied that C. W. Bennett was a partner; that as such he joined in the purchase of the lot, paying for it and taking title in the name of the firm. Afterwards the mortgage was executed for partnership assets, of which he received his full share; and continued, being still a partner. We agree that this made the mortgage a lien upon the lot, whether C. W. Bennett, the alleged partner, actually signed it or not. If the mortgage was void because of the minority of C. W. Bennett at the time it was executed, and for lack of legal confirmation after he attained his majority, we must suppose that for the same reason, his contract of partnership and taking title in the name of the firm was also void. And in that view the other partner, W. D. Bennett, was the sole partner and owner, and the mortgage executed by him alone was binding upon the lot as partnership assets."

In the Ihley case, while the action for disaffirmance was instituted in January, 1886, the deed sought to be disaffirmed was made in May or June, 1870, the minor attained his majority in March, 1871, and $1200.00 of the proceeds of sale sought to be disaffirmed had shortly after the sale been used to purchase another place and the conveyance taken in the name of the plaintiff, his mother, brother and sister jointly, and the family moved to the new place and cultivated it. The acts relied on to show affirmance were performed prior to the passage of this act as appears by the following lan-

guage of the Court, page 304: "We do not think it could alter the case if, as alleged, the plaintiff was under the impression that he could not make the question until after the death of his mother, the life tenant. He certainly had full knowledge of all the facts, and after he had reached his majority he must, like all other persons, be assumed to have known the law; and if he did not claim his rights, others cannot be made to suffer the consequences."

It is manifest therefore that neither of these cases are controlling upon the point raised here.

This is a foreign contract; the rule governing in such cases is stated in *Thornton* v. *Dean,* 19 S. C., 583, 587, quoting from 2 Kent, 458.

"Then it may be laid down as the settled doctrine of public law that personal contracts are to have the same validity, interpretation, and obligatory force in any other country which they have in the country where they are made. It is, however, a necessary exception to the universality of the rule, that no people are bound, or ought to enforce or hold valid in their courts of justice any contract which is injurious to their public rights, or offends their morals or contravenes their public policy or violates a public law," and again on page 590, "One of the established rules in respect to the doctrine of comity is that when the *lex loci contractus* and the *lex fori* as to conflicting rights acquired in each come in direct collision the comity of nations must yield to the positive law of the land, 2 Kent, 461." This rule is cited, approved and applied in *Gist* v. *Telegraph Company,* 45 S. C., 369, 23 S. E., 143; *Meares* v. *Finlayson,* 55 S. C., 105, 32 S. E., 986, and *Carpenter* v. *Lewis,* 60 S. C., 40, 38 S. E., 244.

Tested by these rules, if it be conceded that the mode of enforcing the contract is a part of the obligation of the contract, which we do not concede, and the Georgia law, of which there is no evidence, does not require the affirmance to be in writing, this Court would still be bound to hold the

writing necessary because of the express provision of our statute.

But the statute in question does not touch the obligation of the contract, it relates only to the nature and quality of the evidence necessary to establish the promise or ratification; it is a part of our statute of frauds, and in phraseology similar to the fifth clause of the fourth section of the English statute which provides that no action shall be brought, &c., the rule in such cases is that the *lex fori* governs, because the statute relates to the remedy and not to the validity of the contract. 22 A. & E. Ency. of Law, 2 ed., 1327, and cases cited in note.

The leading case cited is the English case of *Leroux* v. *Brown,* 74 E. C. L., 801; in that case a recovery was denied in an action upon an oral contract not to be performed within a year which was made in France where it was capable of proof by parol evidence; and upon great consideration it was held that the fifth clause of the fourth section of the English statute of frauds affected the remedy only. So in any view our statute must govern.

But it does not follow that the defendant may not by his conduct be prevented from availing himself of the statute under the doctrine of equitable estoppel. Estoppel by conduct arises where one has been induced by the statements, conduct or silence of the person sought to be bound, to do some act or change his position to his detriment. *Chafee* v. *Aiken,* 57 S. C., 507, 35 S. E., 800; *Gaston* v. *Brandenburg,* 42 S. C., 351, 20 S. E., 157. It does not arise from the conduct of others but only from the conduct of the party sought to be estopped. *Hull* v. *Burgess,* 37 S. C., 604, 15 S. E., 963. While in the absence of the statute, the conduct of the defendant, J. Sydney McMillan, after attaining his majority proven in this case may have been sufficient under the authority of *Norris* v. *Vance,* 3 Rich., 165, and *Ihley* v. *Padgett, supra,* to confirm his contract while a minor, there is nothing in the record to show that the plaintiffs have been induced by the representations, conduct, or silence of the de-

fendant to change their position or to do any act to their detriment.

The exceptions raising this point must, therefore, be sustained and the contract of the minor disaffirmed.

The judgment of this Court is, that the judgment of the Circuit Court be modified in the particulars herein indicated, and in all other respects affirmed, and the cause remanded to the Circuit Court to formulate a decree in accordance with the principles herein announced.

April 19, 1907. PER CURIAM. After carefully considering the petition herein, the Court fails to discover that any material question of law or of fact has either been disregarded or overlooked.

It is therefore ordered that the petition be dismissed and that the order heretofore granted staying the remittitur be revoked.