## 10918

### ROBERTS *ET AL* v. DRAYTON *ET AL*

#### (116 S. E., 744)

1. REFERENCE—MOTION FOR LEAVE TO FILE EXCEPTIONS AFTER FINAL JUDGMENT Too LATE.—Where a decree in which exceptions to a Master's supplemental report were sustained and his original report confirmed and made to stand as the judgment of the Court, it was a final judgment, and a motion at a subsequent term after expiration of time for serving notice of appeal, for leave to file exceptions to the Master's original report, was too late, under Code Civ. Proc. 1912, § 225.

2. JUDGMENT—MOTION, TREATED AS ONE TO VACATE JUDGMENT, HELD INSUFFICIENT.—Where after final judgment confirming a Master's report a motion for leave to file exceptions was treated as a motion to vacate the judgment, the only reason therefor being stated in affidavit of counsel that he relied upon the Master's power and promise to file a supplemental report correcting the errors complained of, and referring solely to the failure to file exceptions, and not to anything at the rendition of the judgment, it was not sufficient to set aside the judgment of the Court.

Before McIVER, J., Charleston.   Reversed.

Action by Jacob S. Roberts et al., against Isaac Drayton and W. P. Wagner.   Judgment for plaintiff and defendant Wagner appeals.

The decree of Judge McIver, dated 11th of March, 1922, was as follows:

"This case comes before me for hearing upon a motion, duly noticed on the part of Jacob S. Roberts, one of the plaintiffs herein, for leave to file exceptions to the Report

.of the Master and for a hearing thereupon. Also that the whole matter, involving both reports of the Master, be opened, and heard and considered by the Court.

"After hearing T. St. Mark Sasportas, Esq., attorney for Jacob S. Roberts, for the motion, and H. L. Erckmann, Esq., attorney for W. P. Wagner, *contra,* I am of the opinion that relief should be granted.

"I find that Jacob S. Roberts and Ella R. Parkhurst, plaintiffs, are owners each of a one-third interest as tenants-in-common in the property involved in this action with W. P. Wagner, who has secured by purchase, the one-third undivided interest of Isaac Drayton; that each of them has been in the possession of a portion of the premises corresponding in value with his and her interests therein; and that each is liable for the payment of one-third of the taxes and necessary repairs to the common property. The plaintiff, Jacob S. Roberts, has paid out for taxes and necessary improvements, three hundred nineteen and 43/100 ($319.43) dollars, which amount should be refunded to him from the proceeds of sale of the property before distribution of the fund.

"Now, therefore, on motion of T. St. Mark Sasportas, Esq., attorney for Jacob S. Roberts:

"It is ordered, adjudged and decreed: That before distribution of the proceeds of sale, the Master shall first pay to Jacob S. Roberts the sum of three hundred nineteen and 43/100 ($319.43) dollars; and that in all other respects the report of the Master be and the same is hereby confirmed and made the judgment of this Court.

EDWARD McIVER, Presiding Judge.

*Mr. H. L. Erckmann,* for appellant, cite: *Relief is limited by pleading:* 30 Cyc., 219. *Liability of co-tenant in possession to account:* 14 S. C., 309; 53 S. C., 355. *And right to recover for improvements:* 26 S. C., 39. *Purchaser from co-tenant entitled to benefit of his rights:* 81 S. C., 289. *Master's report, unexcepted to, should be sus-*

*tained:* 71 S. C., 512; 76 S. C., 566; 81 S. C., 76; 45 S. C., 262. *When judgment should be reopened:* 2 Rich. Eq., 63; 17 S. C., 442; 36 S. C., 578; 56 S. C., 17; 112 S. C., 295; 77 S. C., 90; 113 S. C., 221; 116 S. C., 224; 64 S. C., 501; 14 S. C., 331; 47 S. C., 396.

*Mr. T. St. Mark Sasportas, for respondent,* cites: *Supplemental report of Master, affirmed by Circuit Judge, will not be disturbed:* 25 S. C. 600; 26 S. C. 251; 33 S. C. 404; 101 S. C., 462. *Liability of co-tenants to each other:* 109 S. E. 649; 21 S. C., 592; 24 S. C., 265; 21 S. C., 594; 26 S. C., 40; 81 S. C., 288. *Within discretion of Judge to reopen case and allow exceptions to Master's report:* 71 S. C., 512; 76 S. C., 566; 81 S. C., 78; 81 S. C., 268; 105 S. C., 514; 93 S. C., 496; 70 S. C., 160; 64 S. C., 338; 53 S. C., 224; 17 S. C., 451; 51 S. C., 405; 35 S. C., 612.

July 5, 1922.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Action for partition of certain premises known as No. 11 West Street in the city of Charleston, instituted by Jacob S. Roberts and Ella R. Parkhurst, heirs at law of one James S. Roberts, against Isaac Drayton, sole heir at law of Sarah Ann Roberts, widow of James S. Roberts, who predeceased her, and W. P. Wagner, who claimed to have purchased the interest of Isaac Drayton.

It is not clearly so stated in the record, but we gather from it, that James S. Roberts, the owner of the lot, at the time of his marriage with Sarah Ann, had three children, Jacob S. Roberts, Ella Roberts, who afterwards married one Parkhurst, and Naomi Roberts, and that Sarah Ann had one child, Isaac Drayton. James S. Roberts died in 1886 intestate, leaving as his heirs at law the widow, Sarah Ann, and the three children above named. Naomi Roberts died in 1901, intestate, not having married, leaving as her heirs-at-law her brother Jacob and her sister Ella. The widow,

Sarah Ann, stepmother of Jacob and Ella, died in 1917, in-
testate, leaving as her heir at law her son, Isaac Drayton.
The title to the lot therefore upon the death of Sarah Ann
was vested in Jacob, Ella and Isaac Drayton, one-third each.
On December 4, 1918, Isaac Drayton conveyed his undivided
one-third interest in the premises to the defendant, W. P.
Wagner.

The action for partition was begun in September, 1920;
the plaintiffs being represented by their attorney, William A.
Dart. The complaint is in the usual form with the exception
that it is alleged that W. P. Wagner, the grantee of Isaac
Drayton's interest, had damaged one of the buildings on the
lot to the extent of $300, and judgment against him was
demanded therefor. A sale of the premises and division of
the proceeds of sale was also demanded.

The defendant Drayton answered, attacking the convey-
ance which he had executed to Wagner. The defendant
Wagner answered, ·denying the allegation of damage, and
demanding an account of rents and profits by the plaintiffs
who had been in possession.

In October, 1920, the case was referred to the Master
under a general order of reference.

On November 17, 1920, a reference was held at which
the following attorneys were present: W. A. Dart, the plain-
tiff's attorney; T. St. Mark Sasportas, who according to
his affidavit appeared simply as the friend and tutor of W.
A. Dart; H. L. Erckmann, attorney for Wagner; and Lee
Royall, attorney for Drayton.

Testimony was introduced by the plaintiffs tending to
show that there were two houses on the lot, one a small
house of three rooms, on the front of the lot, which for
many years had been occupied by Drayton, and the other a
larger house occupied by the plaintiffs; that after Wagner
had bought Drayton's interest he tore out the front of the
small house and made a garage out of it and used it for six

months or more; that it would cost $300 to restore it. The plaintiffs also offered evidence tending to show that they had paid the taxes from 1910 to 1913, amounting to $114.95, and from 1914 to 1920, $244.43, plumbing $75, lumber $4.15, cleaning vault $3, water $9.50, repairs $25—a total of $476.03. No evidence was offered to sustain the attack of Drayton upon the conveyance made by him to Wagner.

On April 6, 1921, the Master filed his report in which he found the several interests of the parties to have been as above stated; that the plaintiffs were not accountable to Wagner for rents and profits, upon what ground he does not state; that the plaintiffs were not entitled to any credit for the taxes and repairs made by them; and that Wagner was not liable for any damages for the changes made by him on the smaller house. He recommended a sale of the premises and a division of the proceeds one-third to each of the parties, excluding Drayton, but allowing him to present proof of his contention as to the Wagner conveyance within thirty days. To this report there were no exceptions filed by either party.

It appears in the subsequent proceedings that written notice of the filing of this report was given to T. St. Mark Sasportas (the attorney of record, W. A. Dart having removed to Atlantic City) "soon after it was filed"; that Sasportas immediately forwarded a copy of the report to Dart; "that within a few days, and probably within the ten days allowed for serving exceptions," Dart wrote Sasportas, calling his attention to the omission of the Master to allow plaintiffs credit for the taxes and repairs. Instead of filing exceptions to the Master's report bringing this question in issue, Sasportas had a personal interview with the Master, calling his attention to the omission and received assurance that a supplemental report would be filed recommending reimbursement for these items. All of this, of course, without notice to the other attorneys in the case. Accordingly,

on April 19, 1921, after the time for serving exceptions had expired, the Master filed what he termed a "supplemental report," in which he undertakes to reverse himself upon the matter of reimbursement, and recommends that the plaintiffs be allowed $319.43, the amount paid for taxes from 1914 to 1920, $244.43, and plumbing $75, before the distribution of the proceeds of sale.

To this report exceptions were filed by Erckmann, attorney for Wagner, and by Dart, attorney for the plaintiffs. The exceptions of Wagner raised four points, all of vital importance: (1) That the claim for reimbursement was not an issue in the pleadings; (2) that it should not have been allowed without holding the plaintiffs accountable for rents. and profits and money paid by Wagner; (3) that, no exceptions having been filed to the report of April 6, 1921, the defendant was entitled to a confirmation of it; (4) that the Master was without authority to file the supplemental report. The exceptions of the plaintiff charge error in not allowing credit for the taxes for 1910-1913 as well as those for 1914-1920.

The case came on for trial before Judge McIver at the January, 1922, term of the Court of Common Pleas, upon the exceptions to the Master's supplemental report. It was argued by Erckmann for Wagner and Sasportas for plaintiffs. On January 28, 1922, Judge McIver filed the following decree:

"On considering the exceptions of the defendant, W. P. Wagner, to the supplemental report of the Master in this cause filed April 19, 1921, it is ordered that the said exceptions be sustained.

"It further appearing that there are no exceptions served or filed to the report of said Master in this cause filed April 6, 1921, it is ordered that the said report filed April 6, 1921, be confirmed, and that said report and the recommendations thereof stand as the judgment of this Court."

The Court of Common Pleas adjourned sine die on January 28, 1922. No notice of intention to appeal from said order was served within ten days thereafter.

On February 8, 1922, plaintiffs served on the attorney for Wagner a notice of a motion to be made before Judge McIver on February 20, 1922, for an order allowing them to file exceptions to the Master's report of April 6, 1921. A copy of the proposed exceptions was attached to the notice charging error in holding that the plaintiffs were not entitled to reimbursement for taxes and repairs and in holding that Wagner should not be charged with the damage to the smaller house. The motion was supported by affidavits of Sasportas and Dart explaining the circumstances above stated why the exceptions had not been filed.

The motion was heard by Judge McIver, who filed a decree, which will be reported, not only granting the motion, but opening up and deciding the whole matter involved in both reports of the Master and his own decree of January 28, 1922, and decreeing that the plaintiffs were entitled to the reimbursement of $319.43 for taxes and repairs. From this decree the defendant Wagner has appealed, taking in his exceptions the following positions:

(1) That the decree of January 28, 1922, sustaining the defendant's exceptions to the supplemental report and confirming the original report of April 6, 1921, was *res judicata.*

(2) That the only relief available to the plaintiffs was an appeal from the decree of January 28, 1922, which had not been instituted.

(3) That the Circuit Judge had no authority to modify his decree of January 29, 1922, in the absence of fraud, accident, or mistake.

(4) That the Circuit Judge was without jurisdiction to review his decree of January 28, 1922.

Three other exceptions were filed going to the merits of the controversy, which need not be considered, in the view which the Court takes of the points set out above.

The decree of January 28, 1922, in which the defendant's exceptions to the Master's supplemental report were sustained, and his original report of April 6, 1921, confirmed and made to "stand as the judgment of Court," was unquestionably a final judgment in the case. There were three ways by which the parties aggrieved by that decree might have obtained, or at least sought, relief: (1) By a motion before the presiding Judge of the Court during the term at which the decree was entered for a reversal or modification of it, upon any ground demonstrating error or improvidence; (2) by appeal to this Court from the decree; (3) by a motion under Section 225 of the Code or a motion as indicated in *Bank v. Havird,* 99 S. C., 110; 82 S. E., 1006.

The plaintiffs did not adopt any one of these modes of relief, but made a motion, at a subsequent term of the Court, and after the time for serving notice of appeal from the decree had expired, for leave to file exceptions to the original Master's report of April 6, 1921, not to vacate the final judgment entered upon the decree of January 28, 1922.

When the exceptions of the defendant to the Master's supplemental report were served upon the plaintiffs' counsel in April, 1921, within ten days after it was filed on April 19, 1921, they notified him by the express terms of exception 3 that no exceptions had been filed to the Master's original report of April 6, 1921. The decree of January 28, 1922, not only sustained this exception in general terms, but specifically stated that for that reason the original report was confirmed. The plaintiffs' counsel had notice for ten months and by the solemn decree of the Court that that omission existed. If counsel had moved during that long period, or even at the hearing, for leave to file exceptions to the report of April 6, 1921, the Circuit Judge had authority, under Section 225, in his discretion, to allow it. *Brown v. Rogers,* 71 S. C., 512; 51 S. E., 257; *Bank v. McMillan,* 76 S. C.,

566, 57 S. E., 630; *Odom v. Newton,* 81 S. C., 76, 61 S. E., 1071. But it is too late after final judgment. The privilege extended by the first part of Section 225 is limited to procedure before judgment.

But, aside from this somewhat technical ground, and considering the application as a motion to vacate the decree of January 28, 1922, under the latter part of Section 225, the showing of "mistake, inadvertence, surprise or excusable neglect" is conspicuously inadequate. No grounds for such a motion are stated in the notice at all. In the affidavit of counsel we may be permitted to refer to it. The only statement approaching a legal ground is a reason given for not filing exceptions to the report of April 6, 1921. That was that counsel relied upon the Master's power and promise to file a supplemental report correcting the errors complained of—a matter referable solely to the failure to file exceptions, not to anything occurring at the rendition of the judgment. If it was a mistake, inadvertence, surprise, or excusable neglect, it would doubtless have appealed strongly to the Circuit Judge, before judgment, to allow the exceptions to be filed; but counsel could not have been mistaken at that time as to the fact or its importance that the exceptions had not been filed, and that the defendant was relying upon that omission. Counsel went into that hearing with the supplemental report in his possession, standing upon it, and fully advised as to the omission. There is absolutely nothing in the circumstances attending the rendition of the decree tending to sustain the claim now set up that entitles the plaintiffs to set aside the solemn judgment of the Court.

The judgment of this Court is that the decrees of March 11, 1922, be reversed, leaving in full force the decree of January 28, 1922.